[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 9, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-13729

_____

D. C. Docket No. 01-02035-CV-JTC-1

GORDON VESSELS

Plaintiff-Appellant,

versus

ATLANTA INDEPENDENT SCHOOL SYSTEM,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(May 9, 2005)**

Before BARKETT, KRAVITCH and FARRIS[*], Circuit Judges.

PER CURIAM:

Gordon Vessels ("Vessels") appeals the district court's grant of summary

_____

[*]Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by
designation.

judgment to his employer, the Atlanta Independent School System ("AISS"), on his claims that AISS failed to promote him on the basis of his race, in violation of 42 U.S.C. § 1981, 42 U.S.C. § 1983 and 42 U.S.C. § 2000e (2005) ("Title VII"). Vessels asserts separate claims based on two independent employment actions: (i) AISS's decision not to promote him on an interim basis to the Coordinator of Psychological Services position; and (ii) AISS's decision not to promote him to that same position on a permanent basis. While the district court conceded that he had made out his prima facie case as to both claims, it found that AISS proffered race-neutral justifications for its employment actions, which Vessels failed to show were pretextual.

On appeal, Vessels argues that genuine issues of material fact remain as to whether AISS has even discharged its burden to assert a race-neutral justification, as well as whether any legitimate grounds AISS has asserted to support its decision were in fact a pretext for racial preference. Although we agree that AISS was entitled to summary judgment on Vessels' claims relating to the permanent position, material issues of disputed fact remain as to whether AISS's articulated reasons for failing to promote Vessels to the interim position were pretextual. Accordingly, we affirm the grant of summary judgment as to Vessels' permanent position claim, and remand for further proceedings solely on Vessels' claim

2

relating to the interim position.

BACKGROUND

In June of 1999, Dr. Arletta Brinson ("Brinson") announced that she was leaving her position as the Coordinator of Psychological Services for AISS. When Brinson was asked to recommend someone to fill the position on an interim basis, she chose Jill Fields ("Fields"), an AISS school psychologist who was black. Brinson asserts several reasons why she chose to recommend Fields: (i) Fields had occasionally filled in for Brinson's predecessor, and thus had a working knowledge of operational procedures that could help provide continuity during the search for a permanent replacement; (ii) Fields had experience as part of the Office of Youth Services' Leadership Team; and (iii) Fields had assisted with Brinson's processing of referrals and communication with other departments, and had represented her at various meetings. While Brinson considered Vessels for the interim position, she claims she found that: (i) his experience with the AISS system and chains of command was inferior to Fields' experience; (ii) Vessels lacked experience relative to Fields' in interfacing with the human resources department; and (iii) Vessels' leadership style tended to be too unilateral and potentially disrespectful of the schools the department served. Brinson also asserts that she took into account past incidents in which Vessels conducted an unauthorized survey of staff members'

3

reports. Brinson conceded that Vessels had more education, theoretical knowledge, and state certifications than Fields. While AISS regulations would require someone with Vessels' level of qualification for the position on a permanent basis, those regulations only deemed it "desirable" that an interim appointee met those criteria. Those regulations also limited interim appointments to 60 days, absent action by the school board. Brinson ultimately considered Fields to be the best recommendation.

Brinson's supervisor, also hoping for a seamless transition, approved Brinson's recommendation of Fields for the interim position and forwarded the recommendation to the deputy superintendent, Gloria Patterson ("Patterson"). Patterson approved the recommendation, placing Fields in the Coordinator of Psychological Services position on an interim basis until such time as the position could be filled permanently. Patterson's actions contravened AISS regulations allowing interim appointments for a maximum of only 60 days, unless the school board took action. While Patterson cannot recall the exact circumstances surrounding her approval of Fields, she attests that she generally does not blindly accept recommendations, but rather asks about the recommended candidate to ensure the best person has been put forward.

After Fields began serving in the coordinator position on an interim basis,

AISS posted the vacancy announcement for a permanent position three times: in October of 1999, August of 2000, and September of 2001. The announcement was re-posted because both the first and second announcements yielded a small applicant pool, and AISS regulations required that three applicants be interviewed. Ultimately, AISS human resources administrators identified three applicants who would be interviewed by a panel of AISS personnel: Vessels; Fields; and Dr. Gwendolyn Jones ("Jones"), who like Fields, was also a black woman.

Dr. Lucinda Sullivan ("Sullivan"), Executive Director of the Office of Student Programs and Services, oversaw the interview process. Sullivan assembled a panel of six interviewers, and provided them with a job description, the candidates' resumes, and interview questions she had developed.[1] She did not provide them with model answers or instructions on how to rate the candidates. Instead they were to draw on their experience and understanding of the job description. The panel consisted of one white man, one white woman, and four black women. Sullivan asserts that the panel's racial and gender diversity was representative of a cross-section of the AISS departments that work with the psychological services department. One of the panelists was chosen by lottery to

_____

[1]Originally, candidates were also scheduled to complete a writing exercise. However, that portion of the evaluation process was not counted towards the final scores after Vessels complained that his lack of computer skills placed him at an unfair disadvantage.

5

ensure that no preference was given to any candidate.

The panel's aggregate scores placed Jones at 124, Vessels at 106, and Fields at 86. The panelists' written evaluations, which they prepared without consulting one another, reflected a shared concern that Vessels was overly negative and too focused on AISS's problems. Sullivan accepted the panel's recommendation of Jones, and passed it along to the deputy superintendent, who in turn approved Jones and recommended her to the superintendent and school board. Jones replaced Fields on a permanent basis in January 2002. Vessels voluntarily resigned effective January 1, 2003.

The district court, adopting the magistrate's report and recommendation, found that while Vessels made out a prima facie case of race discrimination, AISS had proffered legitimate non-discriminatory reasons for its employment decisions. The district court rejected Vessels' contention that because several of the individuals in the decision-making chain had no independent recollection of the specific reasons for their decision when they were deposed, AISS had not successfully asserted race-neutral reasons for its actions. Furthermore, the district court found that Vessels had not shown AISS's reasons to be pretextual. The district court held that while Vessels may have presented evidence to question whether AISS's decision was correct, there was no dispute as to whether AISS's

6

proffered reasons were sincerely held.

## STANDARD OF REVIEW

We review <u>de novo</u> a district court's grant of summary judgment, viewing all the evidence, and drawing all reasonable inferences, in favor of the non-moving party. <u>Husley v. Pride Rests., LLC</u>, 367 F.3d 1238, 1243 (11th Cir. 2004). We will affirm the grant of summary judgment only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## DISCUSSION

Vessels' disparate treatment claims, brought under Title VII, § 1981, and § 1983, all require proof of discriminatory intent. As Vessels attempts to prove discriminatory intent by circumstantial evidence, his claims are subject to the <u>McDonnell Douglas</u> methods of proof.[2] <u>Richardson v. Leeds Police Dep't</u>, 71 F.3d

---

[2]Though the district court did not explicitly consider it, the magistrate had rejected Vessels' direct evidence of racial preference, finding it too remote in time and unrelated to Vessels' promotion. Vessels' direct evidence focused on his allegations that soon after he began working at AISS in 1987, he overheard Brinson make comments that suggested that she felt black school psychologists were preferable to whites, as they were familiar with the culture of the predominantly African-American school population that AISS served. Vessels also relied on certain comments he claims were made by AISS officials about the desirability of having the employee population mirror the racial composition of the AISS schools. The magistrate found such evidence to be too remote to constitute sufficient direct evidence of discrimination, particularly where Brinson was not the final decision-maker. Vessels has not raised the issue of direct evidence on appeal, focusing exclusively on the <u>McDonnell-Douglas</u> framework for circumstantial evidence. Accordingly, we do not pass on Vessels' direct evidence of discrimination, except where relevant to proving discriminatory intent circumstantially.

7

801, 805 (11th Cir. 1995); Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

Under the familiar McDonnell Douglas framework, the plaintiff must first create an inference of discrimination through his prima facie case. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Once the plaintiff has made out the elements of the prima facie case, the burden shifts to the employer to articulate a non-discriminatory basis for its employment action. Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). If the employer meets this burden, the inference of discrimination drops out of the case entirely, and the plaintiff has the opportunity to show by a preponderance of the evidence that the proffered reasons were pretextual. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993). Where the plaintiff succeeds in discrediting the employer's proffered reasons, the trier of fact may conclude that the employer intentionally discriminated. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000).

VESSELS' PRIMA FACIE CASE

In order to establish a prima facie case, and thus raise an inference of discriminatory intent, the plaintiff must demonstrate only that: (i) he or she belonged to a protected class; (ii) he or she was qualified for and applied for a

position that the employer was seeking to fill; (iii) despite qualifications, he or she was rejected; and (iv) the position was filled with an individual outside the protected class.[3] <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). However, where an employer does not formally announce a position, but rather uses informal and subjective procedures to identify a candidate, a plaintiff need not show under the second prong that he applied for the position – only that the employer had some reason to consider him for the post. <u>Jones v. Firestone Tire & Rubber Co.</u>, 977 F.2d 527, 533 (11th Cir. 1992).

Initially, we agree with the district court that Vessels successfully established a prima facie case, and reject AISS's argument that Vessels failed to establish the second and fourth elements thereof. The fourth element of the <u>McDonnell-Douglas</u> test requires only that a plaintiff show that an individual outside his protected class was promoted. We find AISS's summary assertion that Vessels has not satisfied this fourth element entirely baseless. It is undisputed that Vessels is a white male. AISS ultimately appointed Fields, who AISS concedes is a black female, to the interim position. Under these circumstances, AISS's unsubstantiated assertion that Vessels has not satisfied the fourth element of his

_____

[3]We emphasize that the <u>McDonnell-Douglas</u> burden-shifting framework remains only one method by which the plaintiff can prove discrimination by circumstantial evidence. <u>McDonnell-Douglas</u> is not the exclusive means of proof. <u>See</u> <u>Lee v. Russell County Bd. of Educ.</u>, 684 F.2d 769, 773 (11th Cir. 1982).

prima facie case is meritless.

AISS also argues that Vessels' prima facie case is lacking because Vessels failed to show that he was qualified. Specifically, AISS contends that Vessels was unqualified because he lacked the leadership style which AISS preferred. We agree with the district court that Vessels demonstrated that he was qualified for the interim position. Though AISS had no formal list of qualifications for the interim position, its regulations deemed it "desirable" that the interim appointee hold the qualifications necessary for the position on a permanent basis. It is undisputed that Vessels had the requisite education, years of experience, and state certification levels that AISS specified for even the permanent position. While AISS argues that he was unqualified because he lacked the leadership style they preferred and could not provide a seamless transition,[4] such subjective criteria have no place in the plaintiff's initial prima facie case.

Rather, to demonstrate that he was qualified for the position, a Title VII plaintiff need only show that he or she satisfied an employer's objective qualifications. The employer may then introduce its subjective evaluations of the plaintiff at the later stages of the McDonnell Douglas framework. A contrary rule,

_____

[4]In addition to being entirely subjective, AISS's articulated criteria for the interim position are entirely ex post, as there were no formal selection criteria for the interim position at the time that position was filled.

under which an employer's subjective evaluation could defeat the plaintiff's initial prima facie case, cannot be squared with the structure and purpose of the McDonnell Douglas framework. Specifically, we have made clear that the prima facie case is designed to include only evidence that is *objectively verifiable* and either easily obtainable or within the plaintiff's possession. Walker v. Mortham, 158 F.3d 1177, 1192-93 (11th Cir. 1998). This permits the plaintiff who lacks direct evidence of invidious intent to force the employer to articulate its motives for the challenged employment action so that the plaintiff has an opportunity to show intentional discrimination by circumstantial evidence. Id. If we were to hold an employer's subjective evaluations sufficient to defeat the prima facie case, the court's inquiry would end, and plaintiff would be given no opportunity to demonstrate that the subjective evaluation was pretextual. Such a blind acceptance of subjective evaluations is at odds with the intent that underlies the McDonnell-Douglas framework. This is particularly important because we have emphasized that subjective criteria can be a ready vehicle for race-based decisions. See, e.g., Miles v. M.N.C. Corp., 750 F.2d 867, 871 (11th Cir. 1985). Furthermore, we cannot reconcile a rule that would essentially require a plaintiff to prove pretext as part of his prima facie case at the summary judgment stage with the Supreme Court's instruction that the plaintiff's prima facie burden is not onerous. Patterson

11

v. McLean Credit Union, 491 U.S. 164, 186 (1989); see also Isenbergh v. Knight-Ridder Newspaper Sales, 97 F.3d 436, 439 (11th Cir. 1996) (characterizing plaintiff's prima facie burden as "light"). Thus, subjective evaluations play no part in the plaintiff's prima facie case. Rather, they are properly articulated as part of the employer's burden to produce a legitimate race-neutral basis for its decision, then subsequently evaluated as part of the court's pretext inquiry. Accord Fowle v. C & C Cola, 868 F.2d 59, 65 (3d Cir. 1989); Medina v. Ramsey Steel Co., 238 F.3d 674, 681 (5th Cir. 2001); Wexler v. White's Fine Furniture, 317 F.3d 564, 575 (6th Cir. 2003) (en banc); Jayasinghe v. Bethlehem Steel Corp., 760 F.2d 132, 135 (7th Cir. 1985); LeGrand v. Tr. of Univ. of Ark., 821 F.2d 478, 481 (8th Cir. 1987); Lynn v. Regents of Univ. of Cal., 656 F.2d 1337, 1344-45 (9th Cir. 1981); Burrus v. United Tel. Co., 683 F.2d 339, 342 (10th Cir. 1982); Stewart v. Ashcroft, 211 F. Supp. 2d 166, 170-71 (D. D.C. 2002), aff'd 352 F.3d 422 (D.C. Cir. 2003); LaFleur v. Wallace State Cmty. College, 955 F. Supp. 1406, 1418 (M.D. Ala. 1996).

We agree with the district court that Vessels has established a prima facie case as to both positions, and we proceed to the second step in the McDonnell-Douglas framework.

AISS'S BURDEN OF PRODUCTION

12

An employer's burden to articulate a non-discriminatory reason for failing to promote an employee is a burden of production, not of persuasion.  Burdine, 450 U.S. at 254.  As this burden involves no credibility determination, St. Mary's Honor Center, 509 U.S. at 509, it has been characterized as "exceedingly light." Perryman v. Johnson Prod. Co., 698 F.2d 1138, 1141 (11th Cir. 1983).  So long as the employer articulates "a clear and reasonably specific" non-discriminatory basis for its actions, it has discharged its burden of production.  Burdine, 450 at 254-55.

Vessels asserts that AISS has not met its burden of producing a non-discriminatory justification for its employment actions because: (i) some of the decision makers, particularly those at the upper levels, have no independent recollection of the basis on which they accepted their subordinates' recommendations; and (ii) some of the members of the interview panel likewise have no independent recollection of their reasons for rating Jones above Vessels.

We reject these arguments because the record demonstrates that AISS has articulated sufficient race-neutral justifications for its actions.  For the interim position, Brinson articulated numerous non-discriminatory reasons for her preference for Fields over Vessels, particularly her desire for a seamless transition and her appraisal of Vessels' leadership qualities.  Brinson's supervisor gave reasons based on similar grounds.  For the permanent position, members of the

13

interview panel likewise articulated non-discriminatory reasons for their preference for Jones, including Vessels' negative focus on the department's problems, as opposed to strategies for change. While some of the upper level supervisors who approved these personnel actions do not now have an independent recollection of the exact basis for their approval, this does not negate the fact that *AISS* – through its lower-ranking employees who were primarily responsible for making the decisions – has articulated a sufficient race-neutral justification. As the district court noted, this is not a case where an upper-level manager overruled a subordinate manager's recommendation or decision without explanation. Rather, Brinson, Foster, Sullivan, and the interview panelists all articulated non-discriminatory reasons for their decisions not to promote Vessels, and no one in the management hierarchy exercised their authority to overrule that decision. While Vessels relies on cases such as Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir. 1989) and Schoenfeld v. Babbitt, 168 F.3d 1257, 1268 (11th Cir. 1989), where we have held that the motivations of multiple managers are relevant to our disparate treatment inquiry, neither of these cases are relevant to whether a race-neutral justification has been *articulated*. We require this articulation merely to allow defendants to "meet the prima facie case and to frame the factual inquiry with sufficient clarity so that the plaintiff will have a full and fair ability to demonstrate

14

pretext." Burdine, 450 U.S. at 255-56.

Similarly, two of the interview panel members' inability to recall the specific basis on which they scored Jones higher than Vessels for the permanent position is unavailing to Vessels. Both of the panelists who cannot now recall the basis for their preference (Baker and Ordu-Riely) took notes on their interview evaluation forms, making clear that their preference for Jones stemmed from the overly negative approach which Vessels took during the interview. We agree with the district court that those notes, along with the testimony of the other panelists as to their non-discriminatory reasons for preferring Jones, provide the requisite clear and reasonably specific bases for the AISS panel's subjective preference. See Chapman v. A1 Transport, 229 F.3d 1012, 1034-35 (11th Cir. 2000) (en banc) (employer's non-discriminatory justification can be based on subjective evaluations, so long as they are clear and reasonably specific). Vessels arguments thus fail to persuade us that AISS has not discharged its burden of production, and we proceed to the pretext analysis.

EVIDENCE OF PRETEXT

Once the employer meets its burden to produce a non-discriminatory reason for its actions, the presumption of discrimination is eliminated. Reeves, 530 U.S. at 143. To survive summary judgment, the employee must come forward with

15

evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons given by the employer were not its true reasons, but were a pretext for discrimination. Id.; see also, Chapman, 229 F.3d at 1024. This evidence must reveal "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Cooper v. Southern Co., 390 F. 3d 695, 725 (11th Cir. 2004).

As to the interim position, we find that Vessels' evidence creates a genuine issue of material fact as to whether AISS's articulated reasons were pretextual. Vessels' evidence of pretext includes statements he claims that AISS officials made regarding the desirability of having black employees in a school system serving a predominantly black population. Vessels also relies on a statement he alleges Brinson made regarding the superiority of black school psychologists' performance in serving black schoolchildren. Even where such evidence of race bias proves insufficient to prove an employee's case through direct evidence, it can be relevant in the circumstantial framework to show that the employer's proffered reasons were pretextual. Ross v. Rhodes Furniture, 146 F.3d 1286, 1291 (11th Cir. 1998).

In addition, Vessels raises genuine issues of material fact as to sincerity of

16

the bulk of AISS's proffered race-neutral reasons for the decision. First, Vessels directly disputes whether Fields had experience "filling in" for Brinson's predecessor which Vessels lacked. Taking the evidence in the light most favorable to Vessels, Brinson knew that neither Fields nor Vessels formally "filled in" but rather performed one task or another on an ad hoc basis when necessary. Vessels' evidence thus directly disputes Brinson's asserted reasons.

Second, Vessels disputes whether the incidents of unprofessionalism upon which Brinson claimed to rely actually occurred. Admittedly, this would fail to demonstrate pretext if Vessels only disputed that the incidents occurred, without calling into question Brinson's sincere belief that they occurred. See Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1471 (11th Cir. 1991) (employee failed to show pretext where he presented evidence suggesting that allegations were untrue, but failed to present evidence suggesting that employer's belief in those allegations was unworthy of credence). However, Brinson claims that she had multiple conferences about the incidents with Vessels. Vessels directly denies that any such conferences, or the incidents which precipitated them, even occurred. Brinson does not claim to have relied on information which may or may not be true. Instead, because the conferences, and the discussions which would have occurred therein would be within Brinson's personal knowledge, Vessels raises issues of

17

fact as to whether this asserted reason was pretextual.

Third, Vessels points out that AISS violated its own personnel procedures in the selection and appointment of Fields. Specifically, AISS regulations permitted an interim appointment for only sixty days. However, Fields remained in the position for more than two years. Taken in the light most favorable to Vessels, the finder of fact could infer that this extended appointment enabled Fields to obtain the necessary certifications to qualify for the permanent position. See Carter v. Three Springs Residential Treatment, 132 F.3d 635, 644 (11th Cir. 1998) (evidence that established rules were bent or broken to give candidate an advantage is probative of pretext). Furthermore, AISS regulations deem it "desirable" that the interim appointee hold the qualifications required for a permanent appointee to the position. It is undisputed that Vessels held the state leadership certification which was required of a permanent appointee, while Fields did not. The criteria for the permanent position also stated that a doctoral degree was desirable. Vessels held a doctoral degree, while Fields did not. Though not determinative, AISS's choice of Fields over Vessels when AISS's own regulations appear to favor someone of Vessels' qualifications contributes to Vessels' showing of pretext. See Bass v. Bd. of County Comm'rs., 256 F.3d 1095, 1108 (11th Cir. 2001) ("[T]he fact that [the employer] promoted . . . an employee who was unqualified by [the employer's]

18

own criteria over [an employee who was so qualified] supports an inference of discrimination.").

Furthermore, in addition to holding leadership certification and a terminal degree in the field, Vessels was a published author and as AISS concedes, had a greater understanding of psychological theory and methodology than Fields. Admittedly, our precedent makes clear that where an employee seeks to prove pretext through qualifications alone, the difference in qualifications must be so glaring that no reasonable impartial person could have chosen the candidate selected for the promotion in question over the plaintiff. Alexander v. Fulton County, 207 F.3d 1303, 1340 (11th Cir. 2000). However, where the qualifications disparity is not the sole basis for arguing pretext, the disparity need not be so dramatic to support an inference of pretext. See Bass, 256 F.3d at 1107 ("Hiring a less qualified person can support an inference of discriminatory motivation.").

Taken together and viewed in the light most favorable to Vessels, the evidence of racially tinged statements by AISS decision-makers, the relative superiority of Vessels' qualifications, AISS's disregard of its own employment regulations, and Vessels' rebuttal of many of AISS's proffered justifications raise a genuine issue of material fact as to whether AISS's articulated reasons for rejecting Vessels for the interim position were pretextual. Summary judgment for AISS on

Vessels' <u>interim</u> position claim was thus inappropriate.

By contrast, Vessels' arguments that the interview panelists' proffered reasons for preferring Jones for the <u>permanent</u> position fall short of creating a genuine issue as to pretext. Vessels argues that Sullivan deliberately skewed the interview panel in favor of black and female employees, and failed to give the panelists explicit instructions, permitting their racial preferences to manifest themselves in the subjective rankings. However, one of the panel members was chosen by lottery. Furthermore, four of the six panelists, including the white male panelist, ranked Jones highest, while only two of the panelists, including a black panelist, ranked Vessels highest. The panelists who disfavored Vessels, without consulting one another, made similar comments as to Vessels' excessive focus on problems without addressing solutions. Vessels focus on the panelists' overall racial composition fails to raise genuine factual issues as to whether the panelists' critique of his excessive focus on problems was a pretext for racial preference. For the permanent position, we thus agree with the district court that Vessels failed to create a genuine issue as to pretext, and that summary judgment for AISS on Vessels' claims arising from the permanent position appointment was appropriate.[5]

**AFFIRMED in part, REVERSED in part**.

---

[5]Because we remand the case for further proceedings, we need not address the magistrate's alternative holdings (not reached by the district court) as to AISS's liability under § 1981 and § 1983.