[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 30, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-10375
Non-Argument Calendar

_____

D. C. Docket No. 99-00223-CV-1-MMP

JOHN PAUL HUNT,

Plaintiff-Appellant,

versus

ALBERTO GONZALES,
United States Attorney General,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(January 30, 2007)**

Before TJOFLAT, ANDERSON and HULL, Circuit Judges.

PER CURIAM:

John Paul Hunt, an African-American male proceeding <u>pro se</u>, brought this

Title VII suit against the Department of Justice, alleging (1) that the DEA failed to hire him because of his race and (2) that the DEA retaliated against him for engaging in a statutorily protected activity. See 42 U.S.C. §2000e-16. The district court granted summary judgment in favor of the Department, holding that Hunt could not establish the prima facie elements of either of his claims. On appeal, Hunt argues that he can establish the prima facie elements of both of his claims and that he has produced evidence from which a reasonable juror could conclude that the DEA's proffered reasons for not hiring him were pretext for discrimination.

After a thorough review of the record and the parties' briefs, we affirm the judgment of the district court.

## I. Failure to Hire

We apply the McDonnell Douglas burden-shifting framework to Title VII discrimination claims supported by circumstantial, as opposed to direct, evidence. See Brooks v. County Comm'n of Jefferson County, 446 F.3d 1160, 1162 (11th Cir. 2006). Under this framework, Hunt must first establish a prima facie case of race discrimination by showing that (1) he is a member of a protected class, that (2) he was qualified for and applied for a position the DEA was seeking to fill, that (3) despite his qualifications, he was rejected, and that (4) the position was filled with an individual outside of Hunt's protected class. See Vessels v. Atlanta Indep. Sch.

2

Sys., 408 F.3d 763, 768 (11th Cir. 2005). Then, if Hunt is able to establish the

prima facie elements of his failure-to-hire claim, the burden will shift to the DEA

to proffer a legitimate, non-discriminatory reason for its decision not to hire him.

Id. at 767. Finally, if the DEA meets its burden, Hunt must come forward with

evidence demonstrating that the DEA's proffered reasons were pretext for racial

discrimination.[1] Id. at 768.

The district court determined that Hunt could not establish the fourth prima

facie element of his failure-to-hire claim because he could not show that the DEA

filled the vacancy he applied for with someone outside of his protected class. On

appeal, Hunt argues that, in making this determination, the district court

improperly resolved against him genuine issues of material fact. We will assume,

without deciding, that Hunt is correct and that he can establish the fourth prima

facie element. Even so, his claim still fails because he cannot show that the DEA's

reasons for not hiring him were pretext for racial discrimination.[2]

The DEA has discharged its burden of proffering legitimate, non-

---

[1] The McDonnell Douglas framework also applies to Hunt's retaliation claim, discussed below.

[2] The district court did not reach the issue of pretext on Hunt's failure-to-hire claim, but we may do so on appeal. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1117 (11th Cir. 1993) ("When reviewing a grant of summary judgment, the court of appeals may affirm if there exists any adequate ground for doing so, regardless of whether it is the one on which the district court relied").

discriminatory reasons for not hiring Hunt. The DEA says it declined to hire Hunt for a position as a Special Agent because (1) the hiring panel learned during a routine background check that some of Hunt's former colleagues had criticized his lack of maturity, had complained about his personal demeanor, and had questioned his ethical values; (2) the letter and photograph Hunt submitted in connection with his application for employment to the FBI raised concerns about his suitability for service as a DEA agent; and (3) Hunt received only a "marginal" rating on a psychological evaluation the DEA asked him to undergo after becoming concerned about his fitness for the job.

On appeal, Hunt faults the DEA for relying on this information as a basis for rejecting his application. Hunt argues that he has discredited each of the DEA's proffered reasons. He says that the derogatory statements about him were never substantiated and, thus, should have been removed from his file. He says that any concerns regarding the letter he sent to the FBI were eradicated by the testimony of a DEA agent who said that the letter represented only Hunt's "eagerness to get the job done." With regard to the photograph, Hunt maintains that it was no different than photographs used in DEA brochures. He argues that his marginal performance on the psychological examination was irrelevant because the examination was not a general requirement for the position to which he applied,

4

and, even if it were, he passed the examination and was still not placed in a training class. He argues that he was one of the most competitive applicants for the position and that the DEA's statements to the contrary were meritless. Finally, Hunt argues that inconsistencies between the DEA's two rejection letters show that its reasons for not hiring him were pretext for race discrimination.

In assessing Hunt's arguments on the issue of pretext, we must, "in view of all the evidence, determine whether [he] has cast sufficient doubt on the [DEA's] proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the [DEA's] proffered legitimate reasons were not what actually motivated its conduct." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal citation and quotations omitted). Unsupported assertions do not constitute evidence of pretext, see Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1332 (11th Cir. 1998), and Hunt may not establish pretext simply by quibbling with the wisdom of the DEA's proffered reasons. Combs, 106 F.3d at 1543.

Hunt's arguments on appeal do nothing more than disagree with the wisdom of the DEA's reasons for not hiring him. See id. (distinguishing a "*disagreement* about the wisdom of an employer's reason [from a] *disbelief* about the existence of that reason and its application in the circumstances"). Hunt has not shown that the

5

DEA's reasons for rejecting his application were "not what actually motivated its conduct." Id. at 1538. Thus, even if Hunt can establish a prima facie case of race discrimination, he has failed to produce evidence from which a reasonable juror could conclude that the DEA's decision not to hire him was motivated by racial discrimination. Contrary to Hunt's assertions, a review of Special Agent Varnado's deposition reveals that she was unable to specifically identify any discriminatory animus or evidence that would support a discriminatory intent on the part of the DEA. A review of the entire record reveals that the DEA had legitimate, non-discriminatory, non-pretextual reasons for deciding to reject Hunt's application.

## II. Retaliation

To establish a prima facie case of retaliation, Hunt must show that: "(1) [he] participated in an activity protected by Title VII; (2) [he] suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision." Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000). To establish a causal connection, Hunt must show that: (a) the decision-makers were aware of the protected conduct; and (b) the protected activity and the adverse employment action were not wholly unrelated. Id. at 590 (citations omitted). However, "temporal proximity alone is

6

insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision-maker did not have knowledge that the employee engaged in protected conduct." Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000) (citation omitted).

As the basis for his retaliation claim, Hunt alleges in his complaint that his second application to the DEA, submitted in late 1997, was rejected "solely because he [Hunt] had reported race discrimination of himself." The district court held that Hunt could not satisfy the third prima facie element of his retaliation claim. We agree.

Hunt suffered an adverse action for Title VII purposes—his second application was denied on April 17, 1998. Hunt also engaged in a protected activity for Title VII purposes—he filed an administrative complaint of discrimination with the Department of Justice on July 14, 1998. It is clear, however, that these two events are not causally related because it is simply not possible for Hunt to have been retaliated against in April for engaging in conduct that did not occur until July.

Hunt tries to get around this obvious problem by arguing that Special Agent George Papantoniou *could have* known that he was preparing to file an administrative complaint against the Department because the administrative

grievance process began before he filed his formal complaint. Therefore, according to Hunt, "it is not a stretch to conclude that Papantoniou knew [the July] complaint was forthcoming." Hunt notes that he was required to contact and meet with an EEO Counselor before he filed his complaint and that the Counselor had to conduct a preliminary investigation into his allegations. He argues that these pre-filing activities could have put Papantoniou on notice that a formal complaint was forthcoming. What Hunt's argument ignores is that his initial contact with an EEO Counselor was on May 28, 1998—after Papantoniou had already rejected his application in April.

Finally, in an argument that appears to have been made for the first time on appeal, Hunt says that he engaged in protected activity long before he even filed his administrative complaint and that his rejection in April 1998 was in retaliation for engaging in *that* protected activity, not simply for the filing of the July complaint. Hunt argues that he complained of discrimination (i.e., engaged in statutorily protected activity) in two separate letters written in 1997—one to Agent Papantoniou and one to DEA recruiter Anne Murphy. Hunt argues that those letters "concern[] the disparate handing [sic] of his file *before* Papantoniou sent [Hunt] his [second] rejection letter" and that, presumably, his second rejection was in retaliation for expressing those concerns. We reject this argument because

8

nothing in either letter can be construed as a "protected activity" within the meaning of Title VII. In neither letter did Hunt complain that he was being treated differently than other applicants on the basis of his race. Instead, each letter merely inquired into the status of his application and requested that he be placed in a DEA training class. That is not activity protected by Title VII and thus cannot form the basis of a retaliation claim.

In sum, Hunt has produced no evidence from which a reasonable juror could conclude that Special Agent Papantoniou was aware in April 1998 that Hunt was preparing to file a discrimination complaint against the Department. Because he has not shown a causal connection between the rejection of his application and the filing of his complaint of discrimination, his retaliation claim fails.

For the reasons stated above, we conclude that Hunt has not created a genuine issue of material fact on his failure-to-hire claim or his retaliation claim. Accordingly, the judgment of the district court is

**AFFIRMED.**