[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13496

Non-Argument Calendar

_____

PAUL MUIGAI,

Plaintiff-Appellant,

*versus*

UNITED PARCEL SERVICE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:17-cv-03184-TCB

_____

Before ROSENBAUM, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Paul Muigai appeals the district court's grant of summary judgment in favor of his former employer, United Parcel Service ("UPS"), on his claims of race and national-origin discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a). After careful review, we affirm.

## I.

UPS is a package-delivery company. In November 2011, it promoted Muigai to the position of Technical Support Group ("TSG") Supervisor, after he had worked as a TSG Technician and Senior Technician for more than seven years. As a TSG Supervisor, Muigai's job duties included, among other things, supervising technicians, monitoring projects to make sure they were completed on time, interviewing potential candidates for the TSG department, and conducting infrastructure compliance excellence audits ("excellence audits"). For the period relevant to this case, 2013 to 2015, Muigai was one of seven TSG Supervisors who reported to South Atlantic District TSG Manager Scott Staber, who was a Caucasian male.

Muigai claims that he was forced to resign in 2015 because of ongoing race and national-origin discrimination and retaliation by Staber. According to Muigai, Staber regularly provided preferential treatment to Caucasian supervisors and employees. Muigai

contends that, as a result of Staber's discrimination and retaliation, UPS took several adverse employment actions against him, including (a) assigning a major contract involving Sysco systems to another supervisor; (b) placing him on a performance improvement plan; (c) denying mileage reimbursement; (d) removing him from supervisory duties; and (e) constructively discharging him.

UPS maintains that its actions were supported by Muigai's performance deficiencies, UPS policies, and other reasons, which we will discuss in more detail below. It points to evidence showing that, as a TSG Supervisor, Muigai consistently received unacceptable ratings on his yearly quality performance reviews. In 2012, his first full year as TSG Supervisor, he received a rating of "Improvement Needed." Then, in 2013 and 2014, he received the lowest rating of "Significant Improvement Needed," which, under UPS policy, rendered him ineligible for a year-end pay raise. UPS placed him on a performance improvement plan after his 2013 rating. Muigai disputes that these scores accurately reflected his performance and points out they were controlled by Staber, the alleged discriminator and retaliator.

The district court granted summary judgment to UPS based on a magistrate judge's report and recommendation. Regarding the discrimination claims, the court found, in relevant part, that Muigai had not established either pretext in UPS's explanation for its actions or a convincing mosaic of circumstantial evidence from which a jury could infer intentional discrimination. The court explained that, while Muigai presented evidence of high performance

on certain metrics, he failed to rebut UPS's "copious evidence" showing that he "had low leadership scores and needed improvement in his soft skills." As for the retaliation claims, the court concluded that the Sysco reassignment position was not materially adverse and that Muigai failed to establish pretext in the other decisions challenged. Finally, the court found that the work environment was not sufficiently hostile to support a claim for constructive discharge. This appeal followed.

## II.

We review the district court's summary-judgment ruling *de novo*, construing the evidence and drawing all reasonable inferences in favor of Muigai, the nonmoving party. *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1288–89 (11th Cir. 2021). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine factual dispute exists if a reasonable jury could return a verdict for the nonmoving party. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004).

## III.

As relevant here, Title VII prohibits employers from discriminating against employees on account of their race or national origin. 42 U.S.C. §§ 2000e-2(a)(1). When a discrimination claim is based on circumstantial evidence, as it is here, we ordinarily apply the familiar burden-shifting framework established in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005).

Under that framework, the plaintiff must first create an inference of discrimination by establishing a *prima facie* case. *Id.* The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged employment action. *Id.* If the employer does so, "the inference of discrimination drops out of the case entirely," and the plaintiff then has the opportunity to prove that the employer's proffered reasons were pretextual. *Id.* at 768. To show that an employer's reason is not credible, the employee must meet that reason head on and rebut it; he may not merely quarrel with the wisdom of that reason. *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*). The plaintiff's burden at the pretext stage "merges with the plaintiff's ultimate burden of persuading the court that the employer intentionally discriminated against [him]." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010).

Alternatively, a plaintiff may defeat a summary-judgment motion outside the *McDonnell Douglas* framework by presenting "a convincing mosaic" of circumstantial evidence that raises a reasonable inference that the employer discriminated against him. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Regardless of the particular route, the "crux of the analysis" at summary judgment is simply "whether the plaintiff has offered sufficient evidence to establish a genuine issue of discrimination."

*Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1240 (11th Cir. 2016).

Muigai contends that, in numerous areas of his job, he was subjected to different treatment than similarly situated employees outside his protected classes and suffered several adverse employments actions as a result. We address each claim in turn.

First, the record contradicts Muigai's claim that Staber violated UPS policy to deny his legitimate mileage requests in December 2014 and January 2015. As Muigai concedes, Staber approved his December 2014 request, and he received reimbursement. And Staber appears to have followed UPS policy by denying the January 2015 request, because Muigai sought reimbursement for travel between "home" and "GAATL" (the Atlanta hub). Under UPS policy, employees could receive mileage reimbursement for work-related travel between UPS buildings, but not for travel to and from their personal residence.

Muigai claims that the January 2015 request was for travel between what he viewed as his "home" work location in Roswell and the Atlanta hub, and he points to a dispute about his main work building. Regardless of that dispute, though, we see no basis to conclude that Staber did not honestly believe "home" referred to Muigai's personal home and not the Roswell facility, which Muigai's December 2014 request identified as "GAROS." Nothing in this evidence suggests that the denial was pretextual.

Second, Muigai's evidence does not show that the assignment of the Sysco project to a Caucasian supervisor was motivated by unlawful discrimination. Muigai claims that UPS ordinarily assigned projects to the supervisor "assigned to the TSG team wed to the geographic location of the project," which was he. But he fails to show that the decision not to follow that general practice in this instance was anything other than a reasonable exercise of UPS's business judgment. *See Alvarez*, 610 F.3d at 1266 ("[I]t is not our role to second-guess the wisdom of an employer's business decisions—indeed the wisdom of them is irrelevant—as long as those decisions were not made with a discriminatory motive."). Another TSG Supervisor testified that he had had projects reassigned by Staber based on the company's needs. More to the point, the supervisor who received the project testified that he had more relevant experience with network integration for external customers than Muigai, which was consistent with Staber's statements to Muigai that he lacked the skillset, ability, and attitude to do the job. Particularly given the evidence that the project required a quick-turnaround, Muigai has presented no reason to doubt that Staber and UPS chose the other supervisor because they believed he was better suited for the project.

Third, Muigai has not shown that his poor performance reviews, and resulting placement on a performance improvement plan and denial of pay raises and bonuses, were based on an unlawful motive. Muigai argues that "his objective performance standards were among the highest under the supervision of Scott

Staber." As the district court explained, though, that evidence does not meet UPS's proffered explanation head on and rebut it. *See Chapman*, 229 F.3d at 1030. The record shows that the yearly performance ratings were based not only on objective factors like the metrics Muigai cites, but also subjective factors like leadership and interpersonal skills. And UPS's evidence reflects that Muigai's poor ratings were due primarily to those subjective factors, and that those ratings were based on more than simply Staber's opinion. Muigai makes no argument that these more subjective factors are not relevant to his job, and it is not our role to second-guess an employer's judgment about the skills it values in supervisory employees. *See Alvarez*, 610 F.3d at 1266. Because Muigai merely quarrels with UPS's reasoning and does not address it head on and rebut it, he has not shown pretext.

Moreover, that UPS may not have strictly followed its policies regarding performance improvement plans does not suggest that his placement on such a plan was pretextual. And contrary to Muigai's current claim, the record shows he was repeatedly made aware of the performance deficiencies identified in the performance improvement plan.

Finally, Muigai has not established pretext with regard to UPS's actions when he returned from an extended leave of absence. Muigai claims that UPS discriminated against him by removing his subordinates and administrative access privileges and assigning him less substantial work, when other supervisors who went on leave were not similarly treated. But the record shows that UPS

reassigned Muigai's technicians so they would have a supervisor during his absence, that the work Muigai was assigned—conducting excellence audits—was part of his job as TSG Supervisor, that UPS policy was to disable administrative rights when an employee went on leave for more than 30 days, and that some of Muigai's privileges were not restored because UPS believed he did not need them for his current job duties. Muigai's claim that other supervisors were not treated the same is largely conclusory, as he does not identify the length of their leave or other facts necessary to make a meaningful comparison. *See Lewis v. City of Union City*, 918 F.3d 1213, 1226–27 (11th Cir. 2019) (*en banc*) (explaining the factors grounding a valid comparison).

For these reasons, we cannot say a reasonable jury could conclude that any of the specific decisions Muigai challenges above were motivated by his race or national origin.

## IV.

Title VII also prohibits employers from retaliating against employees for objecting to conduct made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). Like claims of discrimination, we ordinarily evaluate retaliation claims using the *McDonnell Douglas* burden-shifting framework. *See Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1135–36 (11th Cir. 2020). In short, the plaintiff generally must show that the employer's proffered legitimate, nondiscriminatory reason for its action was a pretext for retaliation. *Id.* at 1136.

For his retaliation claims, Muigai largely relies on the same evidence and arguments as his retaliation claims. Although the district court concluded that the Sysco assignment decision was not materially adverse and therefore not actionable, we need not address that ruling because we have concluded, as we explained above, that Muigai cannot establish pretext with regard to that issue. And for the reasons explained in more detail with regard to the discrimination claims, Muigai has not created a genuine issue of fact of pretext in UPS's explanation for any of the challenged employment decisions.

## V.

Finally, Muigai asserts that he was constructively discharged. "To successfully claim constructive discharge, a plaintiff must demonstrate that working conditions were so intolerable that a reasonable person in her position would have been compelled to resign." *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997). If the plaintiff meets that burden, he has established an "adverse employment action" and may challenge the constructive discharge under Title VII on the same terms as a formal discharge. *Id.* at 553 n.2; *see Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004) ("[A]n employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes.").

Here, we assume without deciding that Muigai presented sufficient evidence for a jury to conclude his "working conditions were so intolerable that a reasonable person in [his] position would

have been compelled to resign." *Poole*, 129 F.3d at 553. Neverthe-less, that Muigai may have been constructively discharged does not necessarily mean that he was discharged in violation of Title VII. He still must prove that the discharge was motivated by his race or national origin or was in retaliation for activity protected by Title VII. *See* 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a); *Poole*, 129 F.3d at 553 (finding sufficient evidence of constructive discharge but "leav-ing unresolved" the question of whether the discharge was moti-vated by age discrimination or retaliation). And for the reasons we have explained above, he has not created a genuine triable issue of discrimination or retaliation for any of the employment actions he challenges in this appeal, whether considered individually or as a whole.

## VI.

In sum, we affirm the district court's grant of summary judg-ment to UPS on Muigai's claims of discrimination and retaliation.

**AFFIRMED.**