[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 21-11446

Non-Argument Calendar

————————————————

STEPHANIE DAVIS,

Plaintiff-Appellant,

*versus*

INFINITY INSURANCE CO,
INFINITY PROPERTY AND CASUALTY CORP,
ROBIN ADAMS,
in his capacity as Plan Administrator and Trustee of
Infinitys Profit Sharing Bonus Plan,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:15-cv-01111-JHE

_____

Before WILSON, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

Stephanie Davis appeals from the district court's orders granting her former employer, Infinity Insurance Company and Insurance Property and Casualty Corporation's (collectively, Infinity) motions to dismiss and for summary judgment in her civil action alleging disparate treatment based on national origin discrimination, disparate impact based on national origin discrimination, and disparate treatment based on race discrimination, in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.* Davis argues that she stated a plausible claim of disparate treatment based on national origin. Davis further argues that she established a genuine issue of material fact as to whether Infinity discriminated based on national origin against non-Hispanic employees, thus creating a disparate impact on its non-Hispanic employees. Finally, Davis argues that she established a genuine issue of material fact as to whether Infinity discriminated based on race, thus creating disparate treatment of Black employees. We affirm.

## I.

The undisputed facts in this case are as follows. Infinity is a property and casualty insurance company with locations across the country. Infinity's customer service department consists of two units: the Call Center and Policy Services. The Call Center handles phone calls from customers and employs Customer Service Consultants (CSCs). The Policy Services handles reviewing and processing policy information and employs Policy Service Specialists (PSSs). Infinity hired Davis in 2002 as a Cash Clerk, but she was promoted to PSS in 2006.

Beginning in 2014, Infinity underwent a restructuring to consolidate its operations to locations with large Hispanic populations. This aligned with Infinity's new corporate strategy of being "a low cost provider of choice for urban and Latino markets." As part of this restructuring, Infinity transitioned positions from the company's Birmingham location to other offices, such as Tucson, Miami, and McAllen, Texas. Infinity decided to hire more bilingual (Spanish and English speaking) employees in those locations while terminating employees in its Birmingham location. Infinity sought to achieve 100% bilingual CSC capability at its new locations. In addition, Infinity decided to staff a team of PSSs at those locations, which would be more efficient then having to rely on the PSSs in Birmingham. Infinity did not require that its PSSs be bilingual, but there is evidence in the record that it preferred bilingual PSSs. A majority of the new PSSs hired in McAllen and Tucson were bilingual.

In June 2014, Infinity began a two-phase reduction in force (RIF) for its Birmingham employees. Phase I of the RIF was completed on June 27, 2014, resulting in the elimination of four PSSs. Infinity primarily focused on employees with disciplinary history in Phase I. Phase II of the RIF was completed on October 31, 2014 and involved a more complicated metric in terminating PSSs. Employees were ranked based on three components: Year to Date (YTD) Raw Score, Years of Service (YOS) Score, and Impact Factor. YTD Raw Score took into account an employee's performance from January 2014 through July 2014, measuring productivity and quality of work for that period. YOS Score consisted of a PSS's total years of service divided by 10. Impact Factor measured input from the four PSS supervisors, who assigned each PSS a score between 0 and 4. The Impact Factor apparently went to an employee's ability to adapt to changes in the work environment.

On September 17, 2014, Infinity informed Davis via a written memo that she had been selected to be laid off on October 31, 2014. In relevant part, the memo stated:

> As previously announced[,] we will be transitioning some positions from the call center and policy services in Birmingham to McAllen, Tucson and/or Miami to increase the number of employees with bilingual Spanish/English skills to better service our customers as the company continues to grow.

> The decisions to lay-off employees were extremely difficult due to the high quality of work and

> dedication of the employees in Infinity's workforce.
> We regret to inform you that you have been selected
> as one of the people who will be laid off on October
> 31, 2014. Criteria for lay-off was based on a combina-
> tion of factors, including performance, seniority, dis-
> ciplines and relevant skill sets. We sincerely thank
> you for your service to Infinity and hope to make this
> transition as easy as possible.

The memo went on to explain Davis's severance package and en-
couraged Davis to apply for other positions within the company.
In total, 15 PSSs were terminated during Phase II of the RIF. Da-
vis's cumulative score was near the bottom of the PSSs in the Bir-
mingham location, ranking 29th out of 37. Of the PSSs that were
retained in the Birmingham office, none of them spoke Spanish.

Based on the preceding, Davis alleged that when Infinity ter-
minated her, it engaged in disparate impact discrimination based
on national origin (Count I), disparate treatment discrimination
based on national origin (Count II), and disparate treatment dis-
crimination based on race in violation of Title VII and 42 U.S.C. §
1983 (Count III). The district court granted Infinity's motion to
dismiss Count II because Infinity retained non-Hispanic employ-
ees. Thus, Davis's complaint was insufficient to show that Infinity
intentionally treated non-Hispanics differently than Hispanics.

After discovery, Infinity moved for summary judgment on
Count I and Count III. The district court found that Davis col-
lapsed the overarching goal of reorganization to increase bilingual

staff into a requirement that PSSs be bilingual. Since the record refuted the point that Infinity had a policy requiring PSSs to be bilingual, the district court granted summary judgment in favor of Infinity on Count I. As to Count III, the district court granted summary judgment in favor of Infinity because Davis failed to show that Infinity's reasons for terminating her were pretextual. Davis timely appealed.

## II.

Our analysis proceeds in three parts. First, we will address Davis's disparate impact based on national origin claim. Second, we turn to Davis's disparate treatment based on race claim. Lastly, we address Davis's claim of disparate treatment based on national origin.

Davis argues that the district court erred by granting summary judgment on her disparate impact claim based on national origin because it incorrectly found that Spanish was not used as a factor in terminating and replacing Davis. Davis claims that the termination memo specifically stated that she was being terminated "to increase the number of employees with bilingual Spanish/English skills." Further, she argues that there is evidence showing that Infinity preferred Spanish speaking PSSs. Since the ability to speak Spanish favors Hispanic over non-Hispanic employees, the argument goes, Infinity's reorganization had a disparate impact based on national origin.

"We review *de novo* a district court's grant of summary judgment, viewing all the evidence, and drawing all reasonable inferences, in favor of the non-moving party." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005) (per curiam). Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law. *Id.*

To establish a prima facie case of disparate impact discrimination, the complaining party must (1) identify a specific and facially-neutral employment practice that caused a disparate impact based on race, color, religion, sex, or national origin and (2) demonstrate causation by offering statistical evidence sufficient to show that the challenged practice has resulted in prohibited discrimination. *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1274–75 (11th Cir. 2000). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to establish that the challenged employment practice serves a legitimate, nondiscriminatory business objective. *Id.* at 1275. If the defendant meets their burden, the plaintiff may still prevail by proving that an alternative, nondiscriminatory practice would have served the defendant's stated objective equally well. *Id.*

The parties dispute what the facially-neutral employment practice that caused a disparate impact is here. Starting with the operative complaint, Davis alleges:

> In June 2014, Infinity announced that it was implementing a termination and hiring plan based on a new

policy that conditioned hiring and continued employ-
ment on being fluent in Spanish. Based on such pol-
icy, Infinity began to terminate employees not fluent
in Spanish and replace them with new hires who were
fluent in Spanish.

This allegation that employment was conditioned on the
ability to speak Spanish is consistent with the language Davis uses
in her opposition to Infinity's motion to dismiss her third amended
complaint. There, she argues that "[t]he plaintiff has consistently
alleged that . . . the defendants terminated the plaintiff and other
employees pursuant to a policy which *required* new Policy Service
Specialists to be bilingual" (emphasis added). This contrasts with
her opposition to Infinity's motion for summary judgment, where
she identified the "specific employment practice" as Infinity's "bi-
lingual transition plan" that *preferred* new employees who spoke
Spanish. A policy conditioning employment on bilingualism is a
different employment practice from a "transition plan" that prefers
bilingual employees. Because "[a] plaintiff may not amend her
complaint through argument in a brief opposing summary judg-
ment," *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315
(11th Cir. 2004) (per curiam), we reject Davis's attempt to rechar-
acterize her alleged employment practice. Thus, we analyze Da-
vis's disparate impact based on national origin claim through the
lens that she alleges Infinity conditioned her employment based on
her ability, or lack thereof, to speak Spanish.

Davis cannot establish a prima face case under this theory because her employment was not conditioned on being bilingual. This is clearly supported by the fact that none of the PSSs in Birmingham who were retained after the second phase of the RIF spoke Spanish. Further, the written memorandum she received does not support her claim. While the memorandum stated that the reason for the transitioning of employees to other offices was to *increase* the number of bilingual employees, she herself was not terminated because she could not speak Spanish. The memorandum explained that the criteria for her termination was "based on a combination of factors, including performance, seniority, disciplines and relevant skill sets." Lastly, the record establishes that there was no policy that newly hired PSSs in other locations speak Spanish. Although the vice president of the company admitted to preferring job candidates who spoke Spanish, this is different from a policy that conditioned termination and hiring based on the ability to speak Spanish.

In sum, Davis fails on the first prong which requires a plaintiff to identify a specific employment practice that caused a disparate impact based on national origin. *Joe's Stone Crab*, 220 F.3d at 1274. Assuming that the ability to speak Spanish favors Hispanic employees over non-Hispanic ones, the record rebuts Davis's claim that Infinity conditioned employment based on the ability to speak Spanish. Accordingly, we affirm the district court's grant of summary judgment in favor of Infinity on Davis's discrimination claim of disparate impact based on national origin.

### III.

Next, we turn to Davis's disparate treatment claim based on race. Davis argues that Infinity discriminated against her based on her race, Black, by terminating her employment while retaining several similarly-situated White employees. A plaintiff asserting a disparate treatment claim under Title VII must show that the defendant acted with discriminatory intent through direct or circumstantial evidence. *Joe's Stone Crab*, 220 F.3d at 1286. "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Id.* A plaintiff may use circumstantial evidence to prove intentional discrimination through the *McDonnell Douglas*[1] framework by showing that she was: (1) a member of a protected class, (2) subjected to an adverse employment action, (3) her employer treated similarly situated employees more favorably, and (4) she was qualified to do the job. *Id.*

If the plaintiff meets the pleading requirements, the burden shifts to the defendant to identify a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the defendant proffers such a legitimate purpose, the burden shifts back to the plaintiff to ultimately prove that the defendant's stated reason was a pretext for unlawful discrimination. *Id.*

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

The undisputed facts in the record show that Davis estab-lished a prima facie case of disparate treatment based on race be-cause she was a member of a protected class based on her race, was terminated during the 2014 RIF, similarly situated employees were treated more favorably because some Birmingham PSSs retained their jobs, and she was qualified to do her job because she met or exceeded her annual employee evaluations and had been working as a PSS since 2006.

At the second step, the burden shifts to Infinity to offer a le-gitimate, non-discriminatory reason for the adverse employment action. Infinity satisfies this burden because Davis ranked 29th out of 37th in the three-factor criteria that Infinity used to rank each PSS based on their YOS, YTD raw score, and Impact Factor. None of the three factors were discriminatory. The YOS was simply the number of years an employee worked at the company divided by ten. The YTD raw score measured a worker's productivity. Thus, the more productive and longer-tenured employees were more likely to be retained. The Impact Factor is somewhat more subjec-tive and relates to the employee's ability to adapt to change. Be-cause these factors are non-discriminatory, we find that Infinity of-fered a legitimate non-discriminatory reason for its decision to ter-minate Davis.

Davis argues that the reason is pretextual because she was more qualified than some of the employees who were not let go during the second phase of the RIF and the real reason for her ter-mination was her race. We reject this argument. It's hard to

envision a more objective standard for terminating employees, particularly for the YTD and YOS scores.  Davis contends that she was more qualified than similarly-situated White employees who were not terminated, but this is not a sufficient basis to show pretext.  As we have noted before, "[a] plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer.  *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).   While Davis may disagree with the reasons for her termination, that is not sufficient to show that those reasons were pretext for racial discrimination.  Accordingly, we affirm the district court's grant of summary judgment in favor of Infinity on Davis's disparate treatment based on race claim.

## IV.

Lastly, we turn to Davis's appeal of the district court's dismissal of her disparate treatment based on national origin claim.  According to Davis, the district court erred in concluding that she did not state a plausible claim.

We review de novo the district court's grant of a motion to dismiss under 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff.  *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam).  Although a complaint need not set forth detailed factual allegations, the plaintiff must allege sufficient facts to render the claim "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Stating a plausible claim for

relief requires pleading factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions must be supported by factual allegations, and pleadings that merely contain conclusions do not demonstrate sufficient grounds for relief. *Id.* at 678–79.

To establish a prima facie case of disparate treatment based on a protected class, a plaintiff must prove, among other things, that "her employer treated similarly situated employees *outside* her classification more favorably." *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (per curiam) (alterations adopted and emphasis added). For her disparate treatment based on national origin claim, Davis alleges that her protected class is "non-Hispanic employees." Therefore, to establish a plausible claim, Davis must allege that Infinity treated employees outside her protected class, Hispanic employees, more favorably than her. Davis fails to do this because none of the employees who were retained in the Birmingham office following the RIF were Hispanic. Accordingly, Davis failed to state a plausible disparate treatment based on national origin claim.

**AFFIRMED.**