[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15178
Non-Argument Calendar
_____

D.C. Docket No. 7:10-cv-00060-HL

ARTRICE D. HAUGABROOK,

Plaintiff-Appellant,

versus

WILLIAM O. CASON,
in his official capacity as Superintendent,
VALDOSTA CITY SCHOOLS,
ANNIE FISHER,
in her official capacity as Board Member,
VANESSA FLUCAS,
in her official capacity as Board Member,
WARREN LEE,
in his official capacity as Board Member, et al.,

Defendants-Appellees,

VALDOSTA CITY SCHOOL BOARD,

Defendant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(May 10, 2013)

Before CARNES, HULL, and JORDAN, Circuit Judges.

PER CURIAM:

Artrice Haugabrook appeals the district court's grant of summary judgment to her employer, the Valdosta City Schools (VCS), on her employment discrimination claims under Title VII of the Civil Rights Act of 1964. She contends that VCS violated Title VII by not selecting her for three different positions. She claims that she was not selected as Assistant Superintendent of Operations or as Curriculum Director because of her gender and that she was not selected as Director of Teaching and Learning because of her race.

I.

Haugabrook, who is African American, was employed by VCS in 1994 as a seventh grade English teacher. In 1998 she was promoted to assistant principal of a middle school, and she was promoted to principal in 2003. From 2006 until 2008, she held the positions of Director of Student Services, Director of Pre-K, and Assistant Director of the Alternative School. In 2008 she was promoted to Director of Student Support Services, a position in VCS's central office.

2

In 2010 VCS created the Assistant Superintendent of Operations position. Even though the school board's policy requires that vacancies be posted on a bulletin board in each school, that was not done for the Assistant Superintendent of Operations position. According to Superintendent William Cason, VCS had an ongoing practice of not posting certain positions, especially where there were "local people with good qualifications" that VCS knew were right for the job. Haugabrook herself benefitted from that policy when she was offered the Director of Student Support Services position without it being posted.

Superintendent Cason did not discuss the Assistant Superintendent of Operations position with Haugabrook, but he did talk to a number of principals within the school system who he thought would be both interested and qualified for the position. One of those principals was Alvin Hudson, an African American male. Although Hudson was not formally interviewed, Superintendent Cason recommended him to the Board of Education for the position, and he was approved by the Board in April 2010.

In March or April of 2010, VCS posted a vacancy announcement for the position of Director of Teaching and Learning. In May, after learning that she had been demoted from Director of Student Support Services to assistant principal at an elementary school, Haugabrook applied for the Director of Teaching and

3

Learning position.[1]  Haugabrook, Scarlett Correll Brown, who is white, and 2 other candidates were interviewed for the position.

The interview panel evaluated the four candidates by rating them in eight different categories with possible scores of 1–5, with 5 being the best.  The applicants were also given an overall rating of outstanding, excellent, average, marginal, or unsatisfactory.  Haugabrook received a total evaluation score of 104, and each panel member rated her as "excellent."  Brown received the highest possible evaluation score of 120, and was rated as "outstanding" by each panel member.  The panel recommended both Brown and Haugabrook to Superintendent Cason as finalists for the position.  Cason then recommended Brown to the Board for the position, and the Board promoted her.

In June 2010 VCS posted a vacancy announcement for the position of Curriculum Director for grades 6–12.  Haugabrook applied for that position, and she was one of three candidates interviewed.  The interview panel did not recommend any of the three candidates to Superintendent Cason because the panel did not believe that it had found the best candidate for the position.  The position was re-posted and other candidates were interviewed in October, including Rodney

---

[1] In her complaint, Haugabrook alleged that her demotion was discriminatory.  The district court entered a separate order granting summary judgment in favor of VCS on that claim.  In her notice of appeal, Haugabrook stated that she was appealing that judgment.  She failed, however, to make any arguments about her discriminatory demotion claim in her brief to this court, so that claim is abandoned.  See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004).

4

Bullard.  Superintendent Cason recommended to the Board that Bullard be approved for the Curriculum Director position, and in November 2010, the Board followed that recommendation and hired Bullard for the position.

In July 2010 Haugabrook filed a Charge of Discrimination with the EEOC. Two days later, she filed a complaint seeking injunctive and declaratory relief in the district court.  VCS filed a motion to dismiss, arguing that Haugabrook had failed to exhaust her administrative remedies.  The district court denied that motion and allowed Haugabrook to amend her complaint after she had received her right to sue letter.  Haugabrook's amended complaint alleged that VCS had discriminated against her because of her gender in violation of Title VII by not selecting her as Assistant Superintendent of Operations and by not selecting her as Curriculum Director.  She also alleged that VCS discriminated against her because of her race in violation of Title VII by not selecting her as Director of Teaching and Learning.[2]

After discovery, the district court granted VCS's motion for summary judgment on the claims related to the Assistant Superintendent of Operations position and the Director of Teaching and Learning position.  The court concluded that while Haugabrook had established a prima facie case of discrimination as to

---

[2] Haugabrook asserted several other claims, including intentional infliction of emotional distress, equal protection violations, and violations of the Americans with Disabilities Act.  The district court granted summary judgment in favor of VCS on all of those claims, and Haugabrook has abandoned those claims by failing to raise them in her brief to this Court.  See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004).

5

those positions, she failed to present any evidence showing that VCS's proffered reasons for hiring other candidates were a pretext for discrimination.[3] The court also dismissed for lack of subject matter jurisdiction Haugabrook's discrimination claim related to the Curriculum Director position because she failed to exhaust her administrative remedies as to that claim. The court concluded that the claim related to the Curriculum Director position alleged a new and separate act of discrimination that was not included in the EEOC charge. This is Haugabrook's appeal.

II.

We review de novo a district court's grant of summary judgment, "viewing all evidence and drawing all reasonable inferences in favor of the nonmoving party." Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1254 (11th Cir. 2012). "Summary judgment is proper only when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. (quotation marks omitted).

A.

Haugabrook contends that the district court erred in granting summary judgment in favor of VCS on her claims that VCS violated Title VII by not

_____

[3] The district court recognized that Haugabrook sought the same relief for alleged Title VII violations as she did under 42 U.S.C. §§ 1983 and 1981. For that reason, the court correctly concluded that the elements of the claims were the same and the same analytical framework applied. See Stallworth v. Shuler, 777 F.2d 1431, 1433 (11th Cir. 1985).

selecting her as Assistant Superintendent of Operations because of her gender and not selecting her as Director of Teaching and Learning because of her race. To prevail on her claims that VCS violated Title VII, Haugabrook must prove that VCS was motivated by discriminatory intent. Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 767 (11th Cir. 2005). Because Haugabrook attempts to prove discriminatory intent through circumstantial evidence, we apply the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). See Vessels, 408 F.3d at 767. Under that framework, the plaintiff must first create an inference of discrimination through her prima facie case. Id. Because Haugabrook showed that she was qualified for the positions but that a male employee was selected over her as Assistant Superintendent of Operations and that a white employee was selected over her as Director of Teaching and Learning, she has established a prima facie case of discrimination as to both positions. See id. at 768. The burden then shifts to VCS to articulate a non-discriminatory reason for its action. Id. at 767. If VCS meets that burden, Haugabrook must show that the proffered reasons were pretextual. Id. at 768.

Haugabrook contends that VCS did not articulate a legitimate non-discriminatory reason for selecting other candidates for the two positions at issue. We disagree. An employer's burden to articulate a non-discriminatory reason for failing to promote an employee is an "exceedingly light" burden of production—it

is not a burden of persuasion.  Id. at 769–70.  An employer satisfies its burden by articulating "a clear and reasonably specific non-discriminatory basis for its actions."  Id. at 770 (quotation marks omitted).  Here, VCS articulated non-discriminatory reasons for not selecting Haugabrook for the positions:  (1) she was not qualified for the Assistant Superintendent of Operations position because she lacked experience in areas like transportation and supervision of principals, and (2) she was not selected for the Director of Teaching and Learning position because both the interview panel and Superintendent Cason found Brown to be more qualified.  Those reasons satisfy VCS's burden of production.

To survive summary judgment, Haugabrook is required to present evidence that would permit a reasonable fact finder to conclude that the reasons given by VCS were a pretext for discrimination.  Id. at 771.  The evidence must show "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence."  Id.  A proffered reason is not pretext for discrimination "unless it is shown both that the reason was false, and that discrimination was the real reason."  Springer v. Convergys Customer Mgmt. Grp., Inc., 509 F.3d 1344, 1349 (11th Cir. 2007).

Haugabrook argues that VCS's proffered reason for not selecting her as Assistant Superintendent of Operations—that she was not qualified because she

8

lacked experience in areas like transportation and supervision of principals—was pretextual. She argues that she did not lack experience, and even if she did, Hudson lacked experience in the same areas. Haugabrook, however, cannot prove pretext by "simply arguing or even by showing that [s]he was better qualified than the person who received the position [s]he coveted." Id. (quotation marks and alterations omitted). Instead, she must show "that the disparities between the successful applicant's and [her] own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." Id. (quotation marks omitted). Although Haugabrook argues generally that she had the necessary experience, she admits in her brief to this Court that she did in fact lack experience with transportation on a system-wide level, and that she had experience supervising only assistant principals and not principals. Moreover, Haugabrook's bare allegation, without any supporting evidence, that "Hudson lacked experience in the same areas" is not sufficient to meet her burden.

Haugabrook also argues that Hudson's preselection for the position and the fact that the position was never posted, in violation of the school board's policy, is evidence of pretext. In Springer, we held that a plaintiff's evidence that a position was not posted in violation of the employer's policies was insufficient to survive summary judgment where the plaintiff was aware that the employer did not always

9

post available positions, and the employer had first-hand knowledge of the potential applicants and made the decision based on that knowledge.  Id. at 1350. Haugabrook knew that VCS did not always post available positions, and had in fact benefited from that policy when she was offered the Director of Student Support Services position without it being posted.  And Superintendent Cason had first-hand knowledge of the potential applicants and made his decision based on that knowledge.  Accordingly, VCS's failure to post the position is insufficient to prove pretext.

Haugabrook also contends that VCS's proffered reason for selecting Brown for the Director of Teaching and Learning position—that Brown was more qualified in the eyes of the interview panel and superintendent—was pretextual. Haugabrook argues that Brown was not qualified for the position because she did not have the requisite amount of teaching and leadership experience.  Haugabrook also argues that she was more qualified that Brown because she has more experience and because she has a doctoral degree, while Brown does not. Haugabrook's experience and advanced degree, however, do not make her such a superior candidate that no reasonable person, in the exercise of impartial judgment, could have chosen Brown over her.  See Springer, 509 F.3d at 1349.  Unlike Haugabrook, Brown had special experience with Georgia Performance Standards alignment, testing, and curriculum design, all of which were listed qualifications

10

for the position.  Brown had also worked closely with the retiring Director of

Teaching and Learning and had been responsible for many of the duties of the

Director of Teaching and Learning. [4]

Haugabrook also presented as evidence of pretext testimony suggesting that

Superintendent Cason preselected Brown for the Director of Teaching and

Learning position.  As noted above, however, preselection—even when in

violation of the employer's policies—does not necessarily indicate discrimination.

Id. at 1350.  In the absence of other evidence suggesting racial discrimination,

Haugabrook's evidence of preselection is insufficient to survive summary

judgment.

B.

Haugabrook contends that the district court erred in granting summary

judgment in favor of VCS on her gender discrimination claim related to the

Curriculum Director position on the ground that she failed to include that claim in

her charge of discrimination with the EEOC.  Before filing a Title VII action, a

plaintiff must file a charge of discrimination with the EEOC.  Gregory v. Ga. Dep't

of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004).  A plaintiff's complaint "is

---

[4] Haugabrook also argues that VCS did not explain how the interview panel's subjective ratings factored into the decision to hire Brown, or what led the panel to give Brown a better score.  Although the panel's ratings were subjective, "[a]bsent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext."  Springer, 509 F.3d at 1349.  Haugabrook has not presented any evidence suggesting that the interviewers' hiring criteria were used to mask discrimination.

11

limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id. at 1280 (quotation marks omitted). The purpose of the exhaustion requirement is to give the EEOC the first opportunity to investigate the alleged discrimination so that it may perform its role in obtaining voluntary compliance and conciliation. Id. at 1279.

In her EEOC charge filed on July 7, 2010, Haugabrook claimed that she was not selected for the Assistant Superintendent of Operations position because of her gender, and that she was not selected for the Director of Teaching and Learning position because of her race. Haugabrook did not—and could not—allege at that time that VCS failed to select her for the Curriculum Director position based on her gender because that position was not filled until November 2010, four months after Haugabrook filed her EEOC charge.

Haugabrook argues that that VCS's discrimination in not selecting her for the Curriculum Director position "grew out of the same type of discrimination" that she had experienced when she was not selected for the Assistant Superintendent of Operations and Director of Teaching and Learning positions. But VCS's failure to select her for three separate positions constitutes three separate instances of alleged discrimination. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114, 122 S.Ct. 2061, 2073 (2002) (noting that each instance of failure to promote or refusal to hire is a discrete act of discrimination that

12

constitutes a "separate actionable 'unlawful employment practice'").  Nothing in

Haugabrook's EEOC charge would have put VCS or the EEOC on notice of her

claim based on the Curriculum Director position, which did not then exist because

that position had not been filled at the time Haugabrook filed the charge.  It

follows that the scope of the EEOC's investigation could not reasonably be

expected to have included possible discrimination in selecting a Curriculum

Director.  The district court did not err in dismissing the discrimination claim

based on the Curriculum Director position because Haugabrook failed to exhaust

her administrative remedies.[5]

   **AFFIRMED.**

---

[5] Haugabrook also claims that the district court erred in dismissing her discrimination claim based on the Curriculum Director position because she alleged a "continuing violation" in her EEOC charge.  The continuing violation doctrine is a means for a plaintiff to bring an otherwise untimely claim of discrimination where she had alleged at least one timely claim that is part of an ongoing policy of discrimination.  Cf. EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1271–72 (11th Cir. 2002). That doctrine does not help Haugabrook because her allegations, if true, show three separate, discrete acts of discrimination and not an ongoing policy of discrimination.