[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13206
_____

D.C. Docket No. 1:10-cv-02148-ODE

JACOB FARMER,
ANDREW CANNON,
RICO ARELLANO,
FORREST HILL,

Plaintiffs - Appellants,

versus

BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF
GEORGIA,
DR. ERROLL B. DAVIS,
in his official capacity,
DR. EARL B. YARBROUGH,
in his official capacity as President of Savannah State University,
MARILYNN STACEY SUGGS,
in her individual and official capacities as Interim Athletic Director of
Savannah State University,
JULIUS DIXON,
Interim Head Football Coach,

Defendants - Appellees.
_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(September 23, 2014)

Before JORDAN, Circuit Judge, and BARTLE[*] and BERMAN,[**] District Judges.

PER CURIAM:

This case involves the discrimination claims of four white football players – Jacob Farmer, Andrew Cannon, Rico Arellano, and Forrest Hill – who were verbally offered, but then not given, football athletic scholarships to Savannah State University in 2010. Mr. Hill was a Georgia resident, but the other plaintiffs were not from Georgia.

SSU is a "Historically Black College and University," a distinction which recognizes that the institution "was established prior to 1964, [and] whose principal mission was, and is, the education of Black Americans." 20 U.S.C. § 1061(2). Sometime in 2010, Robert Wells, SSU's white head football coach at the time, verbally offered football scholarships to the plaintiffs. Several weeks before national signing day – the first day when scholarships can formally be offered and accepted – Mr. Wells was replaced as head football coach at SSU by Julius Dixon, who is black. There is evidence, viewed in the light most favorable to the plaintiffs, that SSU let Mr. Wells go because he was white, his fiancée was black, and he could not get the support of SSU's alumni, who were overwhelmingly black.

---

[*] Honorable Harvey Bartle III, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

[**] Honorable Richard M. Berman, United States District Judge for the Southern District of New York, sitting by designation.

Mr. Dixon did not offer any of the plaintiffs scholarships. Eventually all of the scholarships offered by SSU were to black recruits, and the scholarships actually awarded went to black recruits from Georgia, whose scholarships cost the football program less because those recruits were eligible for lower in-state tuition.

The plaintiffs claimed that they were denied the scholarships because of their race and sued SSU, the Board of Regents of the University System of Georgia, and a number of individual defendants under 42 U.S.C. §§ 1981 (impairment of the right to make and enforce contracts) and 1983 (denial of equal protection) and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. They also alleged a violation of their right to travel under the Privileges and Immunities Clauses of Article IV and the Fourteenth Amendment.

The district court granted summary judgment in favor of SSU, the Board of Regents, and the individual defendants on the claims of Mr. Farmer, Mr. Cannon, and Mr. Arellano, and on most of the claims of Mr. Hill. The only claims to go to trial were Mr. Hill's race discrimination claims against Mr. Dixon, SSU's interim head coach. The jury rendered a verdict in favor of Mr. Dixon, finding that race was not a substantial or motivating factor in his decision to not give Mr. Hill a football scholarship.

All four plaintiffs now appeal.  Following a review of the record, and with the benefit of oral argument, we affirm.[1]

**I**

We review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving parties.  *See, e.g., Shuford v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 508 F.3d 1337, 1341 (11th Cir. 2007).  We review evidentiary rulings for abuse of discretion, and even where error has been shown, we will reverse only if that error was prejudicial.  *See, e.g., Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1276 (11th Cir. 2008).

Racial discrimination claims under Title VI, the Equal Protection Clause, and § 1981 are analyzed under the same framework.  For each of these claims, a plaintiff must show intentional discrimination.  *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1325 n. 14 (11th Cir. 2011); *Elston v. Talladega Cnty. Bd. of Educ.*, 997 F.2d 1394, 1406 n. 11 (11th Cir. 1993).[2]

**II**

Because we write for the parties, we assume their familiarity with the record, and set out only what is necessary to explain our decision.

---

[1] We address only the issues that merit discussion.  As to all other issues, we affirm without further discussion.

[2] Other applicable standards of review are set forth in our discussion of the issues on appeal.

4

**A**

The plaintiffs first argue that the magistrate judge and the district court erred in considering, for purposes of summary judgment, a number of affidavits which were based, in part, on a review of SSU documents. Affidavits under Rule 56 can be based on knowledge the affiant has gained through a review of records as long as those records are themselves admissible, *see, e.g., Warner Bros. Ent., Inc. v. X One X Productions*, 644 F.3d 584, 592 (8th Cir. 2011), and the plaintiffs' complaint is that there was no showing that the unidentified SSU records reviewed by the affiants were admissible. We generally agree with the plaintiffs, but cannot see how any evidentiary error was prejudicial.

The district court granted summary judgment because it concluded that Mr. Farmer, Mr. Cannon, and Mr. Arellano – who were not residents of Georgia – were not similarly situated to the black Georgia recruits who received athletic scholarships. That difference in state residency, the district court reasoned, prevented the plaintiffs from putting on a prima facie case of racial discrimination because it cost SSU's athletic department twice as much to give scholarships to non-Georgia residents (due to the difference between in-state and out-of-state tuition). The only facts crucial to this ruling were the out-of-state residencies of Mr. Farmer, Mr. Cannon, and Mr. Arellano, and those facts were undisputed. It is

5

therefore difficult to see how the plaintiffs were harmed by the district court's admission of the affidavits.

In any event, the plaintiffs have failed to present any argument (much less make any showing) that any evidentiary error by the district court was prejudicial insofar as the summary judgment ruling was concerned. We will not reverse unless an evidentiary error was harmful, and by failing to address the issue of prejudice the plaintiffs have failed to show reversible error. *See Sovereign Military Hospitaller Order of St. John of Jerusalem of Rhodes and of Malta v. Florida Priory of Knights Hospitallers of the Sovereign Order of St. John of Jerusalem*, 702 F.3d 1279, 1295 (11th Cir. 2012); *Goldsmith*, 513 F.3d at 1276.

**B**

The district court ruled that Marilynn Stacey-Suggs, SSU's interim athletic director, was entitled to summary judgment. According to the district court, the only evidence presented by the plaintiffs with respect to her was that Mr. Arellano's mother was told that her son should not come on an official visit to SSU because Ms. Stacey-Suggs was not interested in him, but race was not mentioned in that conversation.

The plaintiffs argue that the district court erred because there was evidence that Ms. Stacey-Suggs was involved in recruiting and scholarship decisions, and she and Mr. Dixon denied scholarships to every white recruit who had been

6

promised a scholarship by the former white coach, Mr. Wells.  In addition, the plaintiffs point to evidence that Ms. Stacey-Suggs was present at several meetings where Mr. Wells was told he would never have the support of the SSU alumni because he was white and his fiancée was black.  This evidence, say the plaintiffs, was enough for a jury to find that Ms. Stacey-Suggs discriminated on the basis of race.

We disagree.  First, the fact that Ms. Stacey-Suggs signed the national letters of intent in her capacity as interim athletic director for those who were ultimately offered scholarships does not show (or permit the inference) that she discriminated against the plaintiffs on the basis of their race.  Although the recruits who accepted scholarships were all black, they were also all from Georgia, and it cost SSU less to offer them scholarships because they were eligible for lower in-state tuition.  Second, Ms. Stacey-Suggs' presence at the meetings is not enough to impose individual liability for racial discrimination against the plaintiffs, particularly given that Ms. Stacey-Suggs did not make or ratify the statements in question.

## C

Mr. Farmer, Mr. Cannon, and Mr. Arellano contend that the district court misapplied the prima facie case requirement to their racial discrimination claims by ruling that their out-of-state residencies prevented them from being similarly situated to black Georgia residents who received football scholarships. Citing to

7

our decision in *Vessels v. Atlanta Ind. Sch. Sys.*, 408 F.3d 763, 768-69 (11th Cir. 2005), these three plaintiffs argue that residency is a subjective qualification that should not be considered at the prima facie case stage.

In *Vessels*, a Title VII/§ 1981/§ 1983 case involving the alleged denial of a promotion on the basis of race, we ruled that, with respect to the qualification element of a plaintiff's prima facie case, an employer's "subjective criteria," such as a preferred "leadership style," has "no place in th[at] . . . prima facie case." *Id.* We explained that "to demonstrate that he was qualified for the position, a Title VII plaintiff need only show that he or she satisfied an employer's objective qualifications. . . . [W]e have made clear that the prima facie case is designed to include only evidence that is *objectively verifiable* and either easily obtainable or within the plaintiff's possession. . . . If we were to hold an employer's subjective evaluations sufficient to defeat the prima facie case, the court's inquiry would end, and [the] plaintiff would be given no opportunity to demonstrate that the subjective evaluation was pretextual." *Id.* at 769 (emphasis in original and citations omitted).

We do not see any error based on *Vessels*. In a disparate treatment case based on circumstantial evidence, we usually apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). That means that a disparate treatment plaintiff must show that (a) he is a member of a protected class; (b) he is qualified for the position, promotion, or benefit in question; (c) that there

was adverse action against him; and (d) that he was treated less favorably than a similarly situated person outside of the protected class. *See, e.g., Smith*, 644 F.3d at 1325; *Burke-Fowler v. Orange Cnty.*, 447 F.3d 1319, 1323 (11th Cir. 2006). Here the district court cited to *Vessels* in its summary judgment order, and recognized and applied its holding, agreeing with the plaintiffs that the subjective nature of recruiting should not be considered in looking at the prima facie case. The district court focused on the out-of-state residencies of Mr. Farmer, Mr. Cannon, and Mr. Arellano only in analyzing whether they were "similarly situated" to the black in-state recruits who had been given the scholarships. *See Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) ("To make a comparison of the plaintiff's treatment to that of [other] employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects."). Given the undisputed evidence that it cost the football program twice as much money to offer full scholarships to out-of-state residents, the district court did not err in considering residency to analyze the "similarly situated" element of the prima facie case.[3]

---

[3] We recognize that plaintiffs alleging discrimination can present circumstantial evidence to defeat summary judgment without satisfying the *McDonnell Douglas* framework or relying on its presumptions. *See Smith,* 644 F.3d at 1328. Having reviewed the record, however, we do not believe that the plaintiffs here presented a sufficient mosaic of circumstantial evidence to get their claims to a jury.

One more matter warrants discussion.  Mr. Dixon, after he became SSU's interim head coach, offered a football scholarship to one out-of-state black recruit – D.J. Woods, who attended a high school in Florida.  Given that Mr. Woods was not a Georgia resident, we must determine whether he was similarly situated to Mr. Farmer, Mr. Cannon, and Mr. Arellano.  If he was, then a prima facie case might exist.

The magistrate judge concluded that Mr. Woods was not similarly situated because his scholarship offer was (according to Eddie Johnson's affidavit) contingent upon his ability to prove and obtain Georgia residency (and thereby only need a less costly scholarship).  The district court read the record differently, and did not think that Mr. Woods' offer could be described as contingent on proving and obtaining Georgia residency.  But it ruled  that Mr. Dixon believed Mr. Woods could qualify for in-state tuition because he had a Georgia driver's license, and concluded that the plaintiffs had failed to show that Mr. Dixon's purported belief was, in their words, "facially ridiculous."

Mr. Woods' offer letter from SSU is not in the record, but it appears that each of the offer letters sent by SSU was a form letter without any space to include special conditions attached to the offer.  As a result, we think the district court was correct in refusing, at the summary judgment stage, to characterize the scholarship offer to Mr. Woods as contingent on his obtaining Georgia residency.  The

question then becomes whether the district court correctly ruled that Mr. Woods still was not a proper comparator because he held a Georgia drivers' license, and because Mr. Dixon thought that he might therefore qualify for in-state tuition.

We believe the district court incorrectly considered Mr. Dixon's motivation in looking at the prima facie case. In a discrimination case involving the *McDonnell Douglas* burden-shifting framework, a defendant's proffered reason or explanation for the challenged conduct comes into play only when the plaintiff has made out a prima facie case. *See, e.g., Kidd v. Mando American Corp.*, 731 F.3d 1196, 1202 (11th Cir. 2013).

Nevertheless, the district court's ultimate conclusion – that the offer to Mr. Woods was not enough for the three plaintiffs (Mr. Farmer, Mr. Cannon, and Mr. Arellano) to survive summary judgment on their claims against Mr. Dixon – was correct.  Assuming that the offer to Mr. Woods established a prima facie case, we agree with the magistrate judge that the three plaintiffs did not present sufficient evidence of pretext to get to a jury.

First, action taken pursuant to a "mistaken but honest impression" does not result in liability for discrimination.  *See Dannon v. Fleming Supermarkets of Florida, Inc.,* 196 F.3d 1354, 1363 n.3 (11th Cir. 1999).  Although these three plaintiffs may be correct that Mr. Dixon was mistaken about the possibility of Mr. Woods being able to establish Georgia residency through his Georgia driver's

license, *see* O.C.G.A. §§ 20-3-66(b)(1) & 20-3-66(c)(1)(A), that does not mean (or lead to a reasonable inference) that Mr. Dixon offered Mr. Woods a scholarship, and denied scholarships to the three plaintiffs, on the basis of race.  Not only did Mr. Woods have a Georgia driver's license, Mr. Dixon believed he was originally from Atlanta, Georgia.

Second, it is undisputed that offering scholarships to in-state recruits would make the football scholarship money at SSU go much further, and offering one scholarship to a single out-of-state recruit would not significantly decrease the overall potential savings of a strategy of offering scholarships to in-state recruits. "[A] reason cannot be proved to be a pretext *for discrimination* unless it is shown *both* that the reason was false *and* that discrimination was the real reason."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original and internal quotation marks omitted).  *See also Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) (plaintiff cannot "simply quarrel[ ]" with the wisdom of the decision, but rather "must meet that reason head on and rebut it").

Third, Mr. Woods was a so-called "impact" player with superior talent and skills.  Indeed, he turned down the SSU offer and accepted a scholarship to the University of Illinois.  Mr. Woods' talent level provided a race-neutral reason for Mr. Dixon to offer him a scholarship that would have required payment of higher out-of-state tuition.

12

**D**

Mr. Hill argues that he is entitled to a new trial because the district court excluded evidence relating to Mr. Dixon's failure to give scholarships to Mr. Farmer, Mr. Cannon, and Mr. Arellano. We need not address this issue, for Mr. Hill conceded at oral argument that if the summary judgment against those three plaintiffs was correct, there was no error in the exclusion of evidence pertaining to them. Given that we have affirmed the grant of summary judgment on the claims of those plaintiffs, Mr. Hill, pursuant to his own concession, cannot prevail.

**III**

For the reasons set forth above, we affirm.

**AFFIRMED.**