[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11129
Non-Argument Calendar
_____

D.C. Docket No. 2:13-cv-00189-WCO

JOHNNY L. GRIFFIN,

Plaintiff-Appellant,

versus

THE CITY OF DEMOREST,
GREG ELLINGSON,
individually and in his Official Capacity as
Chief of Police for the City of Demorest,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(December 22, 2015)

Before JORDAN, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Johnny L. Griffin appeals from the district court's grant of summary judgment to the City of Demorest ("the City") and Greg Ellingson in his employment-discrimination lawsuit, brought under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e-2(a) & 2000e-3(a), and 42 U.S.C. §§ 1983 and 1981.  Griffin argues that the district court erred in granting the City and Ellingson summary judgment on his claims (1) that he was not promoted to captain because of his race and (2) that he was terminated in retaliation for filing a racial-discrimination lawsuit against the City and Ellingson.  After careful review, we affirm.

## I.

Before his termination in September 2013, Griffin was a police officer with the City of Demorest Police Department.  Griffin began as a part-time patrol officer in March 2001 and was hired full-time a few months later.  He was promoted to the rank of sergeant in 2006 or 2007 and then commander in January 2012.  During his tenure, he was the only full-time, African-American officer.  At all relevant times, Greg Ellingson was the Chief of Police.

In 2011, in response to a string of thefts, Ellingson decided to create a new investigatory position with the rank of captain, which would have been a promotion for Griffin.  Ellingson recommended that Officer David Crawford be hired for the new position.  Based on Ellingson's recommendation, the City

2

Manager, Juanita Crumley, hired Crawford, who is white. Ellingson did not consider Griffin for the position.

When Crawford was hired, Ellingson moved him to the day shift. As a result, Ellingson decided to move Griffin to the night shift. When Griffin found out, he spoke with two members of the City Council, Florence Wikle and Bruce Harkness, about the schedule change. Thereafter, Griffin was moved back to the day shift.

Around this same time, Griffin witnessed Ellingson put gas in a personal vehicle at an H&H gas station where officers could fill up their City vehicles using a City charge account. Griffin believed that Ellingson was using City funds for personal use. Griffin informed Councilmember Wikle about his suspicion.

In July 2012, Griffin filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In the charge, Griffin alleged that he had been discriminated against because of his race based on the City's failure to consider him for or promote him to the Captain position. He also alleged that the City had discriminatorily reprimanded him for falsifying his time card and denied his leave requests.

In August 2013, Griffin filed a federal complaint against the City and Ellingson, in both his individual and official capacity, under 42 U.S.C. §§ 1981 and 1983, alleging employment discrimination and retaliation on the basis of race.

3

After receiving his right-to-sue letter from the EEOC soon after, Griffin amended his complaint to proceed under Title VII also.

Around the time the City was served with the amended complaint on August 27, 2013, the City initiated an internal investigation regarding the blown cover of an undercover officer, Sergeant Bill Weston. The investigation focused on Griffin. Weston came to believe that his cover had been blown because word leaked that the police were conducting undercover activities in a car matching the description of Weston's personal vehicle. Weston then tried to determine the source of the leak. Weston was told by one of the H&H gas-station attendants that Griffin had spoken with Councilmember Wikle about Weston's potential use of the City's H&H account for personal use.[1]

On August 30, 2013, Weston and Assistant Chief of Police Clinton Jones interviewed Griffin in connection with Weston's investigation. Griffin repeatedly responded "I do not recall" or "I cannot recall at this time" to their questions. Weston provided the information from his investigation to Ellingson, who, in turn, gave the information to Crumley. After presenting the matter to the Mayor and

---

[1] Griffin disputes precisely what the gas station attendant told Weston. He asserts that the attendant did not tell Weston that Griffin *went to* Wikle about the incident, and he claims that it was Wikle who approached him about Weston's potential personal use of City funds. We resolve these factual disputes in favor of Griffin. *See Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1203 (11th Cir. 2010) (all reasonable factual doubts are resolved in favor of non-movant). In any case, it is undisputed that the attendant told Weston that she knew Griffin had talked with Wikle about the gas issue. Griffin likewise does not now deny that he spoke with Wikle about the matter.

City Council for a review and recommendation, Crumley terminated Griffin's employment. Griffin's termination letter reflects that Crumley terminated his employment because she believed that he had violated his chain of command by talking about an undercover investigation with Councilmember Wikle, potentially putting another officer in jeopardy, and then not being truthful about it. Crumley's letter also states that the termination decision was made against the background of Griffin's prior conduct and performance issues.

Following his termination, Griffin amended his complaint a second time to allege a claim of retaliation based on his termination. He later filed the operative third amended complaint. The district court, over Griffin's objections, adopted the magistrate judge's report and recommendation and granted final summary judgment to the City and Ellingson. Griffin now brings this appeal.

Although Griffin raised several discrimination and retaliation claims before the district court, only two claims are advanced on appeal: (1) that Griffin was denied a promotion to the captain-investigator position because of his race and (2) that Griffin was terminated in retaliation for filing this lawsuit.

## II.

We review a district court's grant of summary judgment *de novo*, viewing all the evidence and drawing all reasonable inferences in favor of the non-moving party. *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005).

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine factual dispute exists only if a jury could return a verdict for the non-moving party. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004).

## III.

We begin with Griffin's claim of race discrimination. A party may prove a claim of intentional discrimination through direct or circumstantial evidence. *Wilson*, 376 F.3d at 1085. When a disparate-treatment claim is supported by circumstantial evidence only, as it is here, we generally apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *Id.* at 1087.

Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination, which creates a rebuttable presumption that the employer acted illegally.[2] *Id.* If the plaintiff establishes such a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment action. *Id.* If the employer does so, the presumption of discrimination is rebutted, and the plaintiff then has the opportunity

---

[2] Our analysis of Griffin's Title VII and § 1983 claims is the same because they are based on the same set of facts, so the elements of the claims are the same. *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1275 n.5 (11th Cir. 2008).

to show that the employer's proffered reason was not its true reason for its action, which merges with the plaintiff's ultimate burden of showing that he was discriminated against because of his race. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010).

For a failure-to-promote claim based on race, a plaintiff establishes a *prima facie* case by showing that (1) he is a member of a protected class; (2) he was qualified for and applied for the position; (3) he was rejected in spite of his qualifications; and (4) a person who was not a member of the protected class received the position. *Vessels*, 408 F.3d at 768. There is no dispute that Griffin is a member of a protected class or that the position was given to someone outside of that class. Also, given that the City used "informal and subjective procedures to identify a candidate," Griffin need not show that he applied for the promotion—only that the City had some reason to consider him. *See id.*

Griffin first argues that the district court erred in finding that he did not make out a *prime facie* case because he was not qualified for the investigator position. We agree that the evidence before the district court was insufficient to show that Griffin was not qualified. For the *prima facie* case, qualifications generally must be objectively verifiable and easily obtainable. *See id.* The City presented no such objective evidence. Subjective evaluations of respective qualifications are more appropriate for the inquiry into pretext. *See id.*

7

In any case, the district court proceeded to the later steps of the *McDonnell Douglas* framework and concluded that Griffin had not shown that the City's proffered legitimate, non-discriminatory reason for its decision to hire Crawford—that Crawford had extensive investigatory training and experience that Griffin lacked—was a pretext for discrimination. We agree with the district court that Griffin has not shown pretext.

To show pretext, Griffin must meet the City's proffered reason head on and rebut it, and he cannot simply recast the reason, quarrel with its wisdom, or substitute his own business judgment for the City. *See Alvarez*, 610 F.3d at 1265-66. To do that in a case where the employer's legitimate non-discriminatory reason is that the person hired was more qualified and experienced, the plaintiff generally must show that no reasonable person in the exercise of impartial judgment could have chosen the candidate selected over the plaintiff. *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006). "We do not sit as a super-personnel department, and it is not our role to second-guess the wisdom of an employer's business decisions—indeed the wisdom of them is irrelevant—as long as those decisions were not made with a discriminatory motive." *Alvarez*, 610 F.3d at 1266 (internal quotation marks omitted).

Here, Griffin has not presented sufficient evidence for a reasonable jury to find that the City's reason for not promoting him was pretextual. Notably, Griffin

8

does not dispute that Crawford had investigative training and experience that he lacked.  Accordingly, there is no evidence that Griffin was more qualified for the position than Crawford or that Ellingson did not honestly believe that Crawford was more qualified.  *See id.* at 1163; *Wilson*, 376 F.3d at 1089-91.  Instead, Griffin claims that Ellingson's explanation for hiring Crawford is pretextual because there is evidence that Crawford previously had been removed from an investigator position for poor performance.  This claim fails for at least two reasons.  First, Griffin cannot recast the City's proffered reason for hiring Crawford as "good performance" rather than superior qualifications, nor can he prevail simply by quarreling with the wisdom of the City's decision.  *See Alvarez*, 610 F.3d at 1265-66.

Second, even if "good performance" were part of the City's explanation, Griffin still must rebut the City's other reasons for hiring Crawford, which, as explained above, he has not done.  *See Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007) (stating that the plaintiff must rebut "each of the proffered reasons of the employer" to establish pretext).  Finally, the various other incidents Griffin cites as evidence of pretext, such as being reprimanded for frequenting the girl's dormitory at Piedmont College campus, not being giving a bathroom key at the courthouse, or being disciplined for requesting leave, do not

show pretext because they are unrelated to the employment decision at issue and there is no evidence that they were based on Griffin's race.

In sum, the district court properly granted summary judgment to the City and Ellingson on Griffin's claim of race discrimination.

## III.

We now address Griffin's claim that he was fired in retaliation for filing this lawsuit against the City.  We apply the same-burden shifting framework described above.  *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).  We proceed directly to the question whether Griffin has shown that the City's proffered legitimate, non-discriminatory reasons for his termination—that he violated the chain of command and then was not truthful about it—were actually a pretext for discrimination.[3]

An employer may legitimately terminate an employee based on its good-faith belief that the employee lied during an internal investigation.  *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000).  An employer also may terminate an employee based on a mistaken but honest belief that the

---

[3] The City contends that Griffin did not make out a *prima facie* case of retaliation, despite the close temporal proximity between the complaint and Griffin's termination, because Weston's investigation was an "intervening cause" that eliminated any inference of causation.  Such an argument is better addressed at the pretext stage, however, because it requires analysis of the employer's reason for its action.  *See Vessels*, 408 F.3d at 769 ("[W]e cannot reconcile a rule that would essentially require a plaintiff to prove pretext as part of his prima facie case at the summary judgment stage with the Supreme Court's instruction that the plaintiff's prima facie burden is not onerous.").

employee violated a work rule. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999).

We cannot conclude that a reasonable jury could find that Griffin was fired because he made a complaint of discrimination. The City asserted that Crumley, the City Manager, terminated Griffin because she believed that he violated the Police Department's chain of command by discussing confidential matters with Councilmember Wikle, and she believed that he was not truthful about the violation during the Police Department's internal investigation.

Griffin claims that Weston's cover was already blown for numerous other reasons, such that it was not reasonable for Crumley to believe that Griffin had been responsible, and that Griffin did not, in fact, violate his chain of command by speaking with Councilmember Wikle. However, Griffin again recasts the City's proffered reasons for its actions. He asserts that the question is "whether Crumley had a factual basis from the record evidence to believe that Griffin violated his chain of command by going to Florence Wikle to report the gas incident." But in her separation letter, Crumley places no specific importance on Griffin "going to" Wikle. Rather, the letter states that Griffin violated his chain of command "by discussing confidential matters involving an undercover investigation" with Wikle. And, while Griffin asserts that he did not initiate the conversation, which we accept as true, he does not dispute that he spoke with Wikle about Weston and the gas

11

incident.  Thus, even if Crumley was mistaken about what transpired during Griffin's conversation with Wikle, he has not presented any evidence indicating that Crumley did not honestly believe that Griffin violated his chain of command, particularly when viewed against the background of Griffin's undisputed history of taking matters directly to the City Council.  *See Damon*, 196 F.3d at 1363 n.3; *see also Alvarez*, 610 F.3d at 1266 (noting that the fairness, wisdom, or accuracy of the employer's decision is not at issue).

Moreover, Griffin presents no argument in his initial brief regarding the City's other reason for his termination—that he was not truthful during the investigation.[4]  As an example, Crumley stated in the separation letter that, during his interview with Weston, Griffin initially denied having a conversation with Councilmember Wikle, but then later stated that he could not recall.  Yet, according to Crumley, Wikle had admitted that they had spoken, despite claiming that Griffin provided no information.  "If this were true," Crumley stated, "at a minimum, I believe a fully candid answer from you would have been an acknowledgment that you spoke to Councilwoman Wikle, but did not provide her with any information."  Griffin does not contest the content of Crumley's allegations, and he now admits that he did in fact speak with Wikle, though he

---

[4] Griffin's arguments raised for the first time in his reply brief are not properly us.  *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005).  Therefore, we decline to consider them.

denies that he went to her.  Accordingly, Griffin has presented no evidence or argument to show that Crumley did not in good faith believe that Griffin was not truthful during Weston's investigation.  *See Total Sys. Servs., Inc.*, 221 F.3d at 1176.  Whether Weston bullied other witnesses during the investigation has little bearing on whether Griffin was truthful during his interview.

In sum, Griffin has not produced sufficient evidence for a reasonable jury to conclude that the City's proffered reasons for his termination were actually a pretext for discrimination.  We therefore affirm the district court's grant of summary judgment on his retaliatory-termination claim.

## IV.

For the reasons stated above, we affirm the district court's grant of summary judgment to the City and Ellingson.

**AFFIRMED.**

13