[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12411
Non-Argument Calendar
_____

D.C. Docket No. 2:13-cv-00089-LGW-RSB


IRE GENE GROVNER, JR.,

Plaintiff-Appellant,

versus

GEORGIA DEPARTMENT OF NATURAL RESOURCES,
FRED HAY, JR.,
in his individual capacity,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(March 28, 2016)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Ire Gene Grovner, Jr., who is African-American, appeals the district court's grant of summary judgment in favor of the Georgia Department of Natural Resources ("DNR") and Fred Hay, Jr., in his individual capacity, in Grovner's employment-discrimination suit under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a)(1), and 42 U.S.C. §§ 1981 and 1983.[1]  On appeal, Grovner argues that he showed that the DNR's proffered reasons for not hiring him as captain and mate on the Sapelo Island ferry were pretextual and that the district court failed to consider evidence discrediting the DNR and Hay's proffered reasons as *post hoc* rationalizations and otherwise implausible.  After careful review, we affirm.

## I.

Grovner is a life-long native of Sapelo Island, a barrier island off the coast of Georgia.[2]  Sapelo Island is a state-protected area managed by the DNR that is reachable by boat or by aircraft only.  A passenger ferry service operated by the DNR is the only public transportation between mainland Georgia and Sapelo Island.  Each ferry trip is staffed by a captain and at least one mate.  In total, the

---

[1] Grovner does not separately challenge the disposition of his §§ 1981 and 1983 claims, instead arguing that their resolution suffers from the same defects as the court's ruling on his Title VII claims.  Accordingly, we address all of his claims collectively under Title VII.  *See Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005) (noting that disparate-treatment claims under Title VII, § 1981, and § 1983 all require proof of discriminatory intent).

[2] In reviewing whether summary judgment was appropriate, we take the facts in the light most favorable to the non-moving party, Grovner, and construe all reasonable inferences in his favor.  *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013).

2

DNR employs one senior captain, two captains, and three mates for purposes of operating and maintaining the Sapelo Island ferry. The senior captain reports directly to Hay, the Island Manager for the DNR.

This case arises out of Grovner's attempts to obtain a job with the DNR as a captain or mate on the Sapelo Island ferry. At the time he applied for the two positions, Grovner had been captaining a 50-foot boat for commercial fishing expeditions. He also owned and operated a tourism business, Sapelo Sights, conducting boating tours for groups around Sapelo Island. Grovner applied for the position of captain in September 2012 and for the position of mate in March 2013. A white individual was hired over Grovner for each position.

The interview process for the positions, in broad terms, was as follows. After interview candidates were selected, a panel of three DNR employees interviewed each candidate for the respective positions, asking pre-selected, written questions. Following the interview, the panelists filled out a confidential interview/evaluation form for the candidate, ranking him or her with a score of 1 to 6 in several different categories (which varied by position). The scores of the three interviewers were then totaled. For each position, the candidate with the highest total interview score was hired.

For the captain position, interviews were conducted by Hay, Senior Captain Mike Lewis (black male), and David Mixon (white male), a Region Manager with

the DRN. The panel interviewed three candidates, including Grovner and Mark Thompson, a white male. Grovner received scores of 20 (Hay), 13 (Lewis), and 19 (Mixon), for a total score of 52. Thompson received scores of 31 (Hay), 18 (Lewis), and 26 (Mixon), for a total score of 75. Lewis scored Grovner lower than Thompson, but in his deposition testimony claimed that Grovner was a "better captain" than Thompson. Hay gave Grovner the lowest scores on customer service and passenger vessel operation.

For the mate position, interviews were conducted by Hay, Captain Willis Hillery (black male), and Lewis (black male). Eight candidates were interviewed, including Grovner and Charles Durant, a white male who also had applied for the captain position. Grovner received scores of 24 (Lewis), 17 (Hillery), and 16 (Hay), for a total score of 57, the second highest score. Durant received scores of 23 (Lewis), 17 (Hillery), and 19 (Hay), for a total score of 59. Hillery viewed Grovner and Durant as equal candidates. Lewis testified that he told Hay he wanted to give the job to Grovner. Hay again gave Grovner a lower score on people skills.

In his deposition testimony, Hay explained that the personality of the candidate, especially at the mate level, was a key element for hiring for the ferry. According to Hay, the person had to be a good fit for the crew, someone who could handle the discipline and structure of the DNR, be a team player, and interact

4

appropriately with authority.  Crew members on the ferry also had significant interaction with the public, which, Hay stated, was one of the ferry crew's toughest duties.

Hay testified that, based on his prior interactions with Grovner around Sapelo Island, he did not believe that Grovner's personality would be a good fit for the ferry positions.  Hay had known Grovner since 1993, and over time, Hay had had several "disagreements" with Grovner about the implementation of DNR policies on the Island.  As examples, Hay cited Grovner's docking of his personal boat at a state-owned dock, despite being told not to do so, and having his tour boat at a dock at the same time the DNR ferries were loading and unloading.  In another incident Hay cited, Grovner used his backhoe to help pull a car out of the marsh, leaving a large hole in the process.  Although Hay asked Grovner to properly grade the hole because it was in a protected wetland, Grovner did not do so.  Hay also had overheard Grovner bad-mouthing him on one occasion.  In Hay's view, one of Grovner's biggest challenges was working as part of a team.  Hay noted that, while Grovner had conducted a lot of tours for his tourism business, Hay had seen Grovner on his cellphone while giving tours and had once received a complaint from one of his tour groups.  Based on these and other events, Hay believed that Grovner was resistant to authority, did not respect Hay, would not be a good team player, and lacked the people skills necessary to work on the ferry.

5

As for the other two candidates for the positions, Hay likewise explained that his assessment of their personality and fit for the ferry was primarily informed by prior personal knowledge. Thompson had been working as a mate on the Sapelo Island ferry when he applied for the captain position, and Hay stated that he valued that experience because it showed that Thompson had "people skills." Hay cited the fact that Thompson often got hugs from passengers on the ferry. With respect to Durant, Hay had known him and believed that his positive attributes included his work ethic and the way he interacted with people. Hay cited Durant's work for the phone company, for which he had to go into people's homes to shut their phones off. To Hay, this showed that Durant was skilled with on-the-site diplomacy that would be helpful in dealing with passengers on the ferry.

## II.

When he was not hired for either position, Grovner filed charges of discrimination with the Equal Employment Opportunity ("EEOC"). After receiving his right-to-sue letters, he brought this action in the United States District Court for the Southern District of Georgia. He alleged that by failing to hire him for the two positions, the DNR violated Title VII and Hay, in his individual capacity, violated 42 U.S.C. §§ 1981 and 1983. The district court granted summary judgment to the DNR and Hay, concluding that Grovner had failed to

show that the reasons he was not hired for the two positions were actually pretext for discrimination.  Grovner now appeals.

## III.

We review an order granting summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in favor of the non-moving party. *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1161-62 (11th Cir. 2006).  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine factual dispute exists if a reasonable jury could return a verdict for the non-moving party.  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004).  Summary judgment may be granted where the evidence is merely colorable or is not significantly probative of a disputed fact.  *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012).

## IV.

Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a)(1).  Claims of discrimination may be supported by either direct or circumstantial evidence.  When a claim is based on circumstantial evidence, as it is here, we generally apply the familiar burden-shifting framework established in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).  *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005).

Under the *McDonnell Douglas* framework, the plaintiff must first create an inference of discrimination by making out a *prima facie* case.  *Id.*  The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged employment action.  *Id.*  If the employer does so, "the inference of discrimination drops out of the case entirely," and the plaintiff then has the opportunity to show that the employer's proffered reasons were pretextual.  *Id.* at 768.  The plaintiff's burden at the pretext stage "merges with the plaintiff's ultimate burden of persuading the court that the employer intentionally discriminated against [him]."  *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010).

To show pretext, a plaintiff generally must present sufficient evidence for a reasonable factfinder to find the employer's proffered legitimate reasons for its action are unworthy of credence.  *Id.*  A plaintiff may do so by showing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's rationale."  *Holland v. Gee*, 677 F.3d 1047, 1055-56 (11th Cir. 2012) (internal quotation marks omitted).  The pretext inquiry focuses on whether the employer gave an honest explanation for its behavior.  *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991); *see Alvarez*, 610 F.3d at 1266 ("The

inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and . . . not on reality as it exists outside of the decision maker's head.").

There is no dispute in this case that Grovner established a *prima facie* case of discrimination. Thus, the burden shifted to the DNR to produce legitimate, non-discriminatory reasons for the employment decisions. At summary judgment, the DNR claimed that Grovner was not hired because Thompson and Durant, the candidates who were hired for the captain and mate positions, respectively, were better fits for the positions and received higher scores in their interviews. With regard to Hay, the focus of Grovner's discrimination claims, the DNR asserted that Hay did not score Grovner as highly as Thompson and Durant because Grovner did not accept authority, was not a team player, and lacked the personality and temperament to be part of the ferry crew.

We have held that a subjective reason, including interview performance, qualifies as a "legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis on which it based its subjective opinion." *Chapman v. AI Transp.*, 229 F.3d 1012, 1034 (11th Cir. 2000) (*en banc*). While Hay's reasons for scoring Grovner lower than Thompson and Durant were subjective, Hay gave a clear and reasonably specific factual basis to support his opinions, largely based on first-hand knowledge of the candidates. Grovner does not dispute that Hay's subjective evaluations qualify as a legally

9

sufficient reason.  Instead, he argues that Hay's explanation was actually a pretext

for racial discrimination.  We therefore turn to the question of pretext.

Grovner first argues that the DNR's reasons for not hiring him were *post hoc*

rationalizations or were otherwise implausible.  Grovner primarily challenges the

anecdotes Hay cited when discussing his opinions about Grovner's personality.  In

Grovner's view, these anecdotes support a showing a pretext because they "had

never been cited before as reasons for his rejection."  However, these anecdotes

still have not been cited as reasons for his rejection.  Rather, they arose during the

course of Hay's deposition testimony in which he attempted to explain, by

reference to these anecdotes, why he did not believe that Grovner's personality was

a good fit for the ferry crew.  In that respect, the anecdotes were part of the "factual

basis" on which Hay's subjective opinion of Grovner's personality was based.[3]

*See Chapman*, 229 F.3d at 1033-34.

Grovner does not contend that these incidents did not occur, and we do not

find it surprising that their mention would not have arisen until after litigation

commenced and Hay was asked to explain why he scored Thompson and Durant

higher than Grovner.  Nor are these anecdotes at all inconsistent with Hay's lower

---

[3] We do not find it significant that one of the anecdotes cited by Hay occurred after the interviews for the two positions.  It is understandable and not suggestive of pretext that, in attempting to verbalize the basis for his overall subjective opinion of Grovner's personality, Hay might not strictly distinguish between events before the interviews and events after the interviews.  There is no indication that this one incident was somehow dispositive, particularly in light of Grovner and Hay's long history and the several other anecdotes cited, which undisputedly occurred before the interviews.

scoring of Grovner on categories relating to people skills, which, in turn, affected Grovner's total scores from the interviews—the ultimate reason he was not hired for either position. Because Grovner has not presented any evidence rebutting the factual background on which Hay's subjective opinions of the candidates was based, we have no reason to doubt that Hay honestly believed that Thompson and Durant were better suited in terms of personality and temperament than Grovner for the ferry positions. *See Chapman*, 229 F.3d at 1033-35; *see also Denney v. City of Albany*, 247 F.3d 1172, 1185 ("Absent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext . . . .").

Relatedly, Grovner argues that Hay improperly used first-hand knowledge to make hiring decisions. But, in general, a subjective assessment of candidates based on first-hand knowledge can be perfectly acceptable as a legitimate, non-discriminatory reason for favoring one candidate over another. *See Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349-50 (11th Cir. 2007) ("Where a supervisor has first-hand knowledge of the potential applicants and makes an employment decision based on that knowledge, the failure to post the job is insufficient evidence of pretext."). While an employer's failure to follow its own policies can be evidence of pretext, *see Morrison v. Booth*, 763 F.2d 1366,

11

1374 (11th Cir. 1985) ("Departures from normal procedures may be suggestive of discrimination."), two DNR human resources managers testified that any information an interviewer has about an applicant that is relevant to the job can be used to make a decision. That is also consistent with common sense.

As for Grovner's other claims that Hay manipulated the hiring process to favor his preferred, white candidates, we find insufficient evidence to establish pretext. First, the fact that Hay wanted to hire Thompson for the captain position even before the position was posted does not show pretext under the circumstances. There is no evidence that the addition of a "preferred qualification" for current DNR employees violated DNR policy, as the qualification went through human resources and was included on the job posting. And, while the "preferred qualifications" appear to have been how candidates were selected for interviews, Grovner does not suggest that these preferences factored into the interview scoring.

With regard to Hay's scoring for the mate position, we do not think the record evidence, construed in the light most favorable to Grovner, supports a reasonable inference that Hay knew the scores the other two interviewers gave to Grovner and Durant and then deliberately gave Grovner a score that would deny him the mate position.[4] The evidence shows that Lewis told Hay that Lewis gave

---

[4] Grovner simply asserts, without citing to the record, "Before selecting his score, Hay knew that Lewis had ranked Mr. Grovner one point ahead of Durant and that Hillery had scored both candidates the same." (Appellant's Br. at 31).

12

Grovner the highest score and wanted to give him the position.  In response, Hay stated, "we'll see what my score's going to be" and that he would need to "sit down and think it out."  The record is otherwise ambiguous or silent about what knowledge Hay had at the time he scored Grovner.

In any case, Grovner has presented no evidence suggesting that Hay deliberately scored Grovner lower to give Durant the job on the basis of Grovner's race.  Hay provided a reasonably specific factual basis for his subjective opinions of Grovner's and Durant's personalities with regard to the mate position, and, as mentioned above, that basis stands unrebutted.  Moreover, the evidence supports no more than an inference that Hay's personal dislike for Grovner was the reason Grovner did not get the mate position.  And, in any case, Grovner has not presented sufficient evidence for a reasonable jury to conclude that Hay disliked him because of his race.  *See McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986) ("Personal animosity is not the equivalent of [race] discrimination and is not proscribed by Title VII.").

We do not review the wisdom or general fairness of the DNR and Hay's decisions about who would be a better employee for the ferry crew.  *See Alvarez*, 610 F.3d at 1266 ("[I]t is not our role to second-guess the wisdom of an employer's business decisions—indeed the wisdom of them is irrelevant—as long as those decisions were not made with a discriminatory motive.").  We look only to

see whether the decisions were discriminatory in violation of the law.  Overall, we agree with the district court that Grovner did not present sufficient evidence to establish a triable issue on whether the DNR's asserted reasons for not hiring him were a pretext for racial discrimination.

## V.

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of the DNR and Hay on Grovner's claims of discrimination.[5]

**AFFIRMED.**

---

[5] Grovner initially had argued that his qualifications were superior to those of the other applicants, but he has abandoned that argument on appeal. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680-81 (11th Cir. 2014) (issues not briefed are deemed abandoned).  In addition, because Grovner does not independently address his §§ 1981 and 1983 claims against Hay, we affirm those claims along with his Title VII claims.